The STATE of Ohio, Appellee,

v.

DOANE, Appellant.

[Cite as State v. Doane (1990), 69 Ohio App.3d 638.]

Court of Appeals of Ohio,
Trumbull County.

Nos. 3925, 4023 and 4040.

Decided Oct. 1, 1990.

*Dennis Watkins,* Prosecuting Attorney, and *Peter Kontos,* for appellee. *John Nelson,* for appellant.

CHRISTLEY, Presiding Judge.

Appellant, Mary Doane, held the position of Clerk and Treasurer for the Warren Township Board of Trustees during the period 1982 through 1986. During at least part of this period, appellant was also the president of a company known as Mail Fast. On August 1, 1986, the state auditor's office initiated an inspection of the various township financial books. This audit covered the preceding two-year period. As a result of this action, appellant

was subsequently indicted on multiple charges of theft in office and dereliction of duty, plus one charge of passing a bad check.

The audit revealed a number of allegedly fraudulent transactions involving township funds. Only two of these transactions are relevant to this appeal. The first concerned the reimbursement of certain funds for which there had been no accounting. In 1984, during the audit of the prior two-year period, the state had found two shortages of funds, one for $3,371 and the other for $638.23. In response to these findings, appellant made two deposits into the township account at a local bank, supposedly covering both deficiencies.

As to the first shortage, the deposit consisted of appellant's personal check for $3,017 and a second check covering the remainder of the shortage. Appellant's check was later returned for lack of funds and the amount was deducted from the township account. The second check is not at issue in this appeal.

As to the second shortage, the deposit consisted of five checks. One of these was appellant's personal check for $34.56; the other four checks were from different companies to the township. These latter checks were for various amounts and had been issued at least three months before they were deposited.

The other transaction involved a check for $2,529.94 from the township trustees to Dollar Bank. During the course of the investigation, the auditors were unable to locate the voucher for this check, which would state its purpose. However, the back of the cancelled check stated that it had been used to purchase a bank check. Further investigation showed that this second check was sent to the I.M.S. Leasing Company and that the address for the remitter was the address for Mail Fast.

When contacted, I.M.S. supplied information showing that appellant, on behalf of Mail Fast, had entered into three agreements concerning the leasing of three postal machines. I.M.S. also supplied copies of certain accounts receivable, which showed that at approximately the same time the bank check was issued, Mail Fast owed I.M.S. $2,529.94. In addition, the auditors' investigation also showed that the trustees had transacted no business with I.M.S. during this period.

Based upon these transactions and two others, the Trumbull County Grand Jury returned an eleven-count indictment against appellant in February 1987. Two months later, a preliminary hearing was held in the court of common pleas. At that time, appellant entered a plea of not guilty to all eleven charges. She also stated that she planned to represent herself at trial. The trial court informed appellant of her right to counsel and also attempted to explain some of the difficulties she might have in representing herself. When

appellant reiterated her desire, the court accepted the oral waiver. The court also granted a six-week continuance, on the grounds that appellant needed the time to prepare a proper defense. Appellant never requested the continuance, though, and specifically stated that she did not need the time.

A three-day trial was held in June 1987. The jury found appellant guilty on four counts of dereliction of duty, three counts of theft in office, and one count of passing a bad check. The jury also found appellant not guilty under two counts of theft in office and was unable to reach a verdict on one charge.

After the trial, appellant retained private counsel and immediately filed a motion for acquittal and a motion for a new trial. In the former, appellant argued that the guilty verdicts had been against the manifest weight of evidence. As grounds for the latter, appellant alleged irregularities in the trial proceedings and prosecutorial misconduct. Appellant also submitted that her inexperience in representing herself had contributed to the denial of a fair trial.

The trial court denied both motions, holding that the evidence supported the verdict and that there had not been a duplication of counts in the indictment. The court then sentenced appellant to the following:

| Count 4 | Passing a bad check (felony) | Determinate period of 1 year |
| Count 5 | Theft of $3,017 (felony) | Determinate period of 2 years |
| Count 6 | Theft of $603.58 (felony) | Determinate period of 2 years |
| Count 7 | Theft of $2,529.94 (felony) | Determinate period of 2 years |
| Count 8 | Dereliction of duty (misdemeanor) | Determinate period of 90 days |
| Count 9 | Dereliction of duty (misdemeanor) | Determinate period of 90 days |
| Count 10 | Dereliction of duty (misdemeanor) | Determinate period of 90 days |
| Count 11 | Dereliction of duty (misdemeanor) | Determinate period of 90 days |

The trial court also fined appellant $2,500 on Count 6 and $5,000 on Count 7, and also ordered her to pay $9,167.52 in restitution.

Two days following the entry of this judgment, appellant filed a notice of appeal. This is Trumbull App. No. 3925.

While this appeal was pending, appellant filed a second motion for a new trial, claiming the discovery of new evidence. Appellant also raised the issue of ineffective assistance of counsel and the absence of a fair trial. In relation

to this motion, this court remanded the case to the trial court for a determination on whether, pursuant to Crim.R. 33, appellant had been unavoidably prevented from discovering the new evidence. On remand, the trial court found that appellant had not been unavoidably prevented from the discovery of the new evidence, and accordingly denied appellant leave to file the second motion. Appellant appealed this decision in Trumbull App. No. 4023.

Lastly, in January 1988, a hearing was held on the state's motion to require the state retirement association to withhold the payment of benefits. This motion was made pursuant to R.C. 2921.41(C). One week after this hearing, the trial court granted the motion, but also stated that any payment of benefits for restitution was stayed pending the outcome of the first appeal. Appellant appealed this decision in Trumbull App. No. 4040.

Appellant's three appeals have been consolidated for consideration before this court. As to all three appeals, appellant has assigned the following as error:

"1. The trial court erred to the prejudice of defendant-appellant in failing to preserve her constitutional right to effective assistance of counsel, in initially permitting her to waive counsel without properly ascertaining that such waiver was knowing, intelligent and voluntary and with understanding of the disadvantages, perils and possible sentences involved, and without complying with the mandate of Criminal Rule 44(C) that a record be made of the advice of the court and not complying with the further mandate that the waiver of counsel be in writing; and in never reconsidering the question of waiver and right to effective assistance of counsel.

"2. The trial court erred to the prejudice of defendant in not taking from the jury Count 4, a charge of passing bad checks under section 2913.11, and in not granting post-trial motion for acquittal or alternatively granting motion for new trial.

"3. The trial court erred to the prejudice of defendant in not taking Count 5 from the jury, being a charge of theft in office under R.C. 2921.41(A)(2), in that the $3,017.00 insufficient fund check did not clear, and in overruling defendant-appellant's post-trial motion for acquittal; and ultimately, in failing to grant motion for new trial, the conviction being contrary to law and the evidence.

"4. As to Count 6 of the indictment, theft in office of $603.58 under R.C. 2921.41(A)(2), the verdict of the jury was against the law and the manifest weight of the evidence, and the trial court also erred to the prejudice of defendant-appellant in not taking the case from the jury before its retirement and in overruling post-verdict motion for acquittal.

"5. As to Count 7 of the indictment, theft in office of $2,529.94, being Warren Township Check No. 202439, there was error to the prejudice of defendant-appellant in that the verdict of the jury was contrary to the evidence and not supported by sufficient weight of the evidence, and the trial court erred to the prejudice of defendant-appellant in letting the case go to the jury and denying post-trial motion for acquittal or new trial.

"6. As to Counts 8, 9, 10 and 11, dereliction of duty by depositing in the Township account on November 14, 1984 four checks dated in July and August, the trial court erred to the prejudice of appellant in (1) purporting to deprive appellant of her speedy trial right by continuing the case for trial beyond the speedy trial rule day for misdemeanors pursuant to motion for continuance by the state and over the opposition of appellant in the purported exercise of judicial discretion and 'in the interests of appellant' (!); (2) By allowing 'shotgun prejudice' in permitting four counts to be based on a single act with a single animus; (3) In not taking these counts from the jury as being unsupported by the law and the evidence and against the manifest weight of the evidence; and (4) in failing to grant a motion for acquittal as to these counts as contrary to law and the evidence.

"7. The trial court erred to the prejudice of appellant in failing to grant motion for new trial and in failing to grant motion for acquittal, in failing to ensure that appellant received her constitutional right of effective counsel and an effective defense, in failing to preserve to the appellant her right to a fair trial, in failing adequately to instruct the jury, and in failing to control the efforts of the prosecuting attorney to prejudice the jury.

"8. The trial court erred to the prejudice of appellant in failing to order new trial as to all charges, to the extent it should not have dismissed the charge or granted motion for acquittal.

"9. The tactics employed by the state prejudiced the jury and constituted error prejudicial to appellant.

"10. The trial court erred to the prejudice of appellant in its judgment of February 4, 1988 ordering restitution in the amount of $6,150.52 by withholdings from appellant's public employee retirement system funds on the grounds of appellant's failure to produce evidence opposing the township's motion for a withholding order."

As noted earlier, appellant was not represented by counsel in this case until her trial had concluded. At the preliminary hearing, the trial court accepted appellant's waiver of counsel after she had repeatedly emphasized her desire to represent herself. In her first assignment, appellant maintains that this waiver was constitutionally invalid because the trial court did not

properly ascertain whether she was knowingly and intelligently waiving her right to counsel. This argument has merit.

■ Under the Sixth Amendment, a criminal defendant has a constitutional right to act as his own counsel during his trial. *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. This right clearly has been given the same status as the basic right to counsel, as its denial is grounds for reversing a conviction. However, before the right can be invoked, the defendant must voluntarily, knowingly and intelligently waive his right to assistance of counsel. *Id.; State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399.

While stating that the waiver of counsel is a constitutional requirement, the Supreme Court has never specifically described the type of inquiry a trial court must make when a defendant seeks to assert this right. Instead, the court has set forth the following general standard:

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann* [1942], 317 U.S. [269], at 279 [63 S.Ct. 236, 242, 87 L.Ed. 268, 275][.] * * * " *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581–582.

In light of this language, various federal circuit courts have held that a valid waiver cannot be found until it is determined that the defendant fully understands the significance of the proceedings and the difficulties he could encounter in attempting to represent himself. While, again, these courts have not stated that the trial court is required to ask a specific set of questions, they have held that the defendant must be informed of certain aspects of the case before the waiver can be made knowingly and intelligently. See, *e.g., United States v. Campbell* (C.A.1, 1989), 874 F.2d 838; *United States v. Padilla* (C.A.10, 1987), 819 F.2d 952; *Fitzpatrick v. Wainwright* (C.A.11, 1986), 800 F.2d 1057.

■ In support of this requirement, many of the decisions in this line of authority refer to *Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. In that case, a plurality of the Supreme Court stated that a waiver of counsel can only be valid when the defendant has knowledge of the following: " * * * the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts

essential to a broad understanding of the whole matter." *Id.* at 724, 68 S.Ct. at 323, 92 L.Ed. at 321.

In addition to the foregoing items, a majority of the circuit courts have also held that the trial court must also inform the defendant that he will be required to follow the same rules of procedure and evidence which normally govern the conduct of a trial. *Campbell, supra; United States v. Edwards* (C.A.11, 1983), 716 F.2d 822. Moreover, these courts have also emphasized that the defendant's background, including his age, education, and legal experience, should be considered in determining this question. *Fitzpatrick, supra; United States v. Gallop* (C.A.4, 1988), 838 F.2d 105.

Although this recent federal precedent is not binding upon this court, a review of the relevant decisions in this state shows that the *Von Moltke* standard has generally been followed. In its only decision on this question since *Faretta,* the Ohio Supreme Court upheld the validity of a waiver of counsel, specifically noting that the trial court had complied with *Von Moltke* in addressing the defendant on this issue. *Gibson, supra.*

In the instant case, the record before this court only contains one colloquy between the trial court and appellant on the waiver issue. This discussion occurred at the preliminary hearing, which was held approximately six weeks before trial. At the beginning of this proceeding, the trial court advised appellant that she needed to retain counsel. After appellant had stated her intention to represent herself, the court then gave a general explanation of the procedure in a criminal case. During this discussion, the court told appellant that she would be required to follow certain rules. Once this discussion was completed, appellant again stated that she wanted to represent herself.

Following a brief recess and an extended discussion on whether the trial should be continued, the court then began to arraign appellant on the charges in the indictment. After two of the charges had been read, the state requested a second recess. Following a momentary delay, appellant stated that she understood the indictment and waived any further reading of the charges. Appellant then reiterated her desire to act as her own counsel, and the proceeding ended.

Based upon the transcript of the preliminary hearing, this court must conclude that the trial court failed to comply with the requirements of *Von Moltke.* The court must do so regardless of the defendant's willingness to waive that part of the procedure. Specifically, there is no indication that the court informed appellant of the exact nature of the charges against her, the possible penalties she might face, and any possible defenses to the charges. Even if the court had finished reading the remainder of the charges, this

would not have been sufficient to truly inform appellant of the gravity of the situation. *Von Moltke* and the recent federal precedent clearly require the trial court to do more than merely restate the charges contained in the indictment. This requirement was purposely designed to remove any doubt as to whether the defendant is making an informed decision.

At the beginning of the preliminary hearing, the trial court stated that it had advised appellant of her right to counsel on a prior occasion. While this court has no reason to doubt this statement, the record before us does not contain a transcript of this earlier proceeding. Crim.R. 44(C) provides that the advice and waiver of counsel must be recorded in accordance with Crim.R. 22. As a result, the usual appellate presumption concerning the regularity of the trial proceedings is not applicable in this instance. Cf. *Garfield Heights v. Brewer* (1984), 17 Ohio App.3d 216, 17 OBR 458, 479 N.E.2d 309. Before an appellate court can conclude that the waiver of counsel was made knowingly and intelligently, the record must contain a transcript of the trial court's discussion of the facts listed above.

▮ Moreover, there is no indication in the record that appellant signed a written waiver of her right to counsel. Crim.R. 44(C) also provides that if the charged offense is serious, the waiver of counsel must be in writing. As with the rule concerning the recording of the waiver, this requirement is mandatory. *State v. Morris* (June 24, 1988), Lake App. No. 13–193, unreported, 1988 WL 67508. Theft in office is a third degree felony; thus, it is a "serious" offense, as that term is defined in Crim.R. 2. Accordingly, a written waiver of counsel should have been executed in this case.

Appellant maintains that the trial court acted negligently in protecting her constitutional rights. In respect to this aspect of her argument, the record is not supportive. As has been noted in other jurisdictions, a trial court is placed in a difficult position when the defendant attempts to invoke the right to self-representation:

"On the one hand, a defendant has a constitutional right to represent himself, and on the other hand, the court has a constitutional duty to ensure that the defendant only represents himself with full awareness that the exercise of that right is fraught with dangers. No matter what decision the [trial] court ultimately makes—whether to honor the defendant's request or deny it—the defendant is likely to appeal." *United States v. Moya–Gomez* (C.A.7, 1988), 860 F.2d 706, 732–733.

In this case, the trial court repeatedly asked appellant whether she wanted to waive her right to counsel, thereby giving her every opportunity to reconsider her decision. In addition, the court specifically told her that it

would be in her best interest to retain counsel. These actions demonstrate that the court tried to impress upon appellant the importance of her decision.

Nevertheless, the trial court failed to discuss, of record, the majority of the information which has been found to be necessary in order for the defendant to properly waive her right to counsel. Thus, appellant's first assignment is well taken.

■ Appellant's second assignment concerns her conviction for passing a bad check, under R.C. 2913.11(A). This part of the indictment was based upon the fact that appellant's personal check for $3,017, which was deposited in the township account to cover one of the prior shortages of funds, was subsequently returned for lack of funds. Appellant submits that the trial court erred in not dismissing this charge because her actions do not constitute a violation of the statute. Specifically, appellant argues that the statute does not apply when the bad check is given to cover a pre-existing debt.

As a preliminary matter, this court would simply note that appellant's characterization of the debt as "pre-existing" is technically incorrect. Appellant's liability for these particular funds was created when she received notification from the state auditor that a shortage of funds existed. In response to the notice, appellant immediately deposited the check in question into the township account. This situation is clearly different from the typical "pre-existing debt" scenario, in which funds are owed by a certain date and the debtor does not attempt to pay until the due date has past. In contrast, a debt is considered existing when the date or period for its payment may not arrive yet. Appellant's debt for the shortage patently falls within the latter category.

Nevertheless, even if we were to consider the debt to be pre-existing, this court still concludes that appellant's argument is without merit. The elements of passing a bad check are set forth in R.C. 2913.11(A):

"No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored."

Appellant's argument focuses upon the meaning of the term "defraud." Appellant contends that this term, as defined in the Revised Code, requires that the passing of the check must occur simultaneously with the receipt of some benefit by the drawer.

Citing cases from other jurisdictions, appellant further argues that this contemporaneous exchange does not happen when the check is given to cover a pre-existing debt, and thus the statute does not apply. The basis for this argument is that the issuance of the check itself does not affect the underly-

ing relationship between the parties, *i.e.*, the drawer is still liable for the debt, while the payee did not give up anything for the check. As appellant notes, the foregoing rule has been adopted by a majority of those states in which the statute requires that something of value must be obtained as a direct result of the issuance of the bad check. See Annotation (1958), 59 A.L.R.2d 1159.

Appellant also maintains that this issue has never been considered by a court of this state. However, in *State v. Lowenstein* (1924), 109 Ohio St. 393, 142 N.E. 897, the Ohio Supreme Court held that a prima facie violation of the applicable statute had been alleged when the prosecuting attorney stated during his opening argument that the bad check had been given for a past consideration. At that time, the applicable statute provided that a felony had been committed if a person, with intent to defraud, drew a check when insufficient funds were on deposit.

Interpreting this statute, the *Lowenstein* court quoted Webster's definition of fraud: " 'Fraud' is a 'deception deliberately practiced with a view to gaining an unlawful or unfair advantage.' " *Id.* at 400, 142 N.E. at 898. Pursuant to this definition, the court concluded that *financial* damage was not a prerequisite for a finding of fraud. Instead, it was sufficient if the person issuing the check gained some type of advantage as a result of his actions:

"When in payment of a past consideration a man gives a check, if he gives the check knowing that he has not funds on deposit to cover it, why does he so act? He so acts because he expects to gain an advantage. He expects perhaps to deceive persons who are pressing for payment; he expects them to think that he has paid the old debt when he has not paid." *Id.* at 401, 142 N.E. at 899.

In the modern Revised Code, the term "defraud" is defined in R.C. 2913.01:

"(B) 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception some detriment to another."

For the purposes of interpreting R.C. 2913.11, passing bad checks, this court fails to see any distinction between the terms "advantage" and "benefit." In this regard, it should be noted that the present definition does not require that something of value be obtained as a result of the deception. Thus, this court holds that the *Lowenstein* precedent is still binding, and that a check given for a pre-existing debt can be the basis of a violation of the statutory prohibition.

That a person issuing a bad check to cover a pre-existing debt can obtain a benefit because of her actions can be seen from the facts of this case. Since

she had control over the financial books of the township, appellant was the only individual who would notice the deduction of the $3,017 from the township account when her check bounced. As a result, the representatives of the state auditor's office might believe that the shortage had been paid when it actually was not. Appellant would obviously benefit from this state of affairs. This, of course, would support a finding of an intent to defraud.

■ Before convicting appellant on this count of the indictment, the jury was also required to find that she had issued the check knowing that it would be dishonored. In instructing the jury on this point, the trial court stated that such a finding was appropriate if certain circumstances existed. The court's instruction was consistent with R.C. 2913.11(B)(2), which provides that the person issuing the check will be presumed to know that the instrument will be dishonored when:

"The check or instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor."

■ Also under her second assignment, appellant submits that the foregoing presumption is unconstitutional when applied to the situation in which the bad check is given to cover a past obligation. In support of this contention, appellant cites *State v. Campbell* (1975), 97 Idaho 331, 543 P.2d 1171. In that case, the Idaho Supreme Court held that the following rebuttable presumption was unconstitutional when applied in the pre-existing debt context:

" ' * * * As against the maker or drawer thereof, the making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be prima facie evidence of intent to defraud and of knowledge of no funds or insufficient funds * * *.' " *Id.* at 333, 543 P.2d at 1173.

In concluding that the defendant's due process rights were violated when the presumption was applied in the pre-existing debt situation, the court emphasized that there was no rational connection between the proven fact and the presumed fact. However, in doing so, the Idaho court specifically limited its holding to the presumption concerning the intent to defraud.

In the instant case, the statutory presumption, by its very language, only applies to the drawer's knowledge that the check will be dishonored, not her intent to defraud. Consequently, the *Campbell* holding has no application in this case.

Moreover, this court concludes that the statutory presumption in R.C. 2913.11(B)(2) does not violate appellant's due process rights. Regardless of whether the check is given to cover a pre-existing debt or not, the presumed fact (knowledge that the check will be dishonored) can be logically inferred from the proven fact (failure to satisfy debt within ten days after presentment within thirty days). Thus, appellant's second assignment is not well taken.

■ As noted above, the bounced check was allegedly meant to cover the majority of one of the shortages of funds which had been discovered during the prior audit. This shortage was for $3,371, but appellant's check was for $3,017. In relation to this shortage, the jury also found appellant guilty of theft of these funds, in violation of R.C. 2921.41(A)(2). In her third assignment, appellant maintains that this verdict was against the manifest weight of the evidence, since it was never established that she had "control" over those funds.

The jury's finding on this particular issue was clearly based upon circumstantial evidence. As clerk for the township trustees, appellant had exclusive control over their finances. When the shortage was discovered, appellant was liable for the debt and accordingly deposited her personal check to cover it. However, the check bounced, and appellant took no other action to repay the township or to otherwise cover the check. From this evidence, the jury could infer that appellant had taken the money with the intent of not returning it.

■ Circumstantial evidence can only form the basis of proof of an element of a crime when it is not consistent with any reasonable theory of innocence. *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897. Appellant's failure to attempt to pay the shortage either to the bank or to the township after the first check bounced is consistent only with the theory that she never intended to repay the shortage. Moreover, there was no evidence of any inability to repay the funds. Appellant's theories of defense were only presented to the jury by argumentation. Thus, there was no evidence of record from which the jury could draw any other inference as to why she never repaid the money, as appellant did not actually testify.

■ This reasoning is also applicable in the analysis of appellant's fourth assignment. The other shortage of funds from the 1984 audit was for $638.23. To cover this deficiency, appellant deposited four checks from four different companies, plus her own personal check. Based upon these actions, the jury again found appellant guilty of theft in office. Appellant asserts that this finding is also against the weight of the evidence, as the state failed to establish her intent to take the funds.

As in the prior assignment, the jury verdict on this point is premised upon the fact that appellant, as clerk, would be liable for any deficiency in funds, since she was custodian of the township finances. If such is the case, then her use of the four checks to cover the shortage was inappropriate because those funds *already* belonged to the township. From this, the jury could readily infer an intent to not pay back the funds which were missing. The fact that all four of the checks were at least three months old also supports this conclusion.

The second transaction which formed the basis for the charges involved the township check for $2,529.94. This check was made payable to Dollar Bank and was used to purchase an official check which was sent to I.M.S. Leasing Company. The amount of this check was equal to the amount Mail Fast owed to I.M.S. under three leasing agreements. Based upon this evidence, the jury found appellant guilty of theft. In her fifth assignment, appellant again contends that this verdict was not supported by the evidence. Appellant's argument is that the evidence shows that the trustees tacitly assumed responsibility under the leases and purchased the three postal machines for the township's own use.

In support of this position, appellant refers to certain information which was not introduced at trial, but was submitted later in her motion for a new trial. Even if this evidence is relevant to the motion, it cannot be considered in determining the merits of this assignment.

The evidence introduced at trial showed that appellant did not make a voucher explaining the purpose of the check when it was issued. In addition, two members of the board specifically testified that the trustees never transacted any business with I.M.S. From this, the jury could again infer that appellant intended to use the township money to pay off the debts of the company of which she was president.

In relation to this point, appellant correctly notes that one of the trustees testified that one of the postal machines was found in the trustees' office. Appellant submits that this evidence implies the trustees had purchased the machines and, thus, they had approved the check. Notwithstanding this, the record contains sufficient evidence contra appellant's theory to support the finding that the trustees had not given appellant permission to make the transaction.

In the preceding four assignments, appellant has challenged the sufficiency of the evidence supporting her conviction on three counts of theft in office and one count of passing a bad check. In addition to these counts, appellant was also convicted on four charges of dereliction of duty. These particular charges were predicated on the allegation that the four checks appellant used

to cover the majority of the second shortage of funds had been issued to the township more than three months before they were deposited. In her sixth assignment, appellant presents three separate arguments concerning why the verdicts on these charges should be overturned.

First, appellant maintains that these four charges should have been dismissed because the state failed to bring her to trial within the applicable time limit set forth in the speedy trial statute. R.C. 2921.44(F) provides that dereliction of duty is a second degree misdemeanor; accordingly, pursuant to R.C. 2945.71(B)(2), appellant had to be brought to trial within ninety days after the service of summons.

The record before this court shows that the summons on the indictment was served on February 24, 1987, and that the trial did not begin until June 15. Thus, appellant has established a prima facie violation of the statute as to the four misdemeanor charges, since the ninety-day limit was exceeded by twenty days.

As was previously noted, the indictment against appellant also contained seven felony charges. R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending must be brought to trial within two hundred seventy days of her arrest. Interpreting the speedy trial statutes as a whole, the Ninth Appellate District has held that when both felony and misdemeanor charges are pending against a person, the longer statutory period for the felonies is applicable to all of the charges. See, *e.g.*, *State v. Luehrs* (Sep. 2, 1987), Summit App. No. 4163, unreported, 1987 WL 16653; *State v. Downey* (Feb. 9, 1983), Summit App. No. 10889, unreported, 1983 WL 3972.

However, in *State v. Dembecki* (Apr. 15, 1983), Portage App. No. 1273, unreported, 1983 WL 6239, this court reached the opposite conclusion on this issue. In that case, the defendant was indicted on one felony charge and two misdemeanor charges. After the state had failed to bring him to trial on the misdemeanor charges within the ninety-day period, the defendant moved to dismiss for lack of a speedy trial. The trial court overruled this motion. On appeal, this court reversed, specifically holding that the ninety-day period was still applicable to the two misdemeanor charges.

In arguing that the two-hundred-seventy-day period applied to all three charges, the state in *Dembecki* referred to R.C. 2945.71(D). At that time, as now, this section provided:

"A person against whom one or more charges of minor misdemeanor and one or more charges of misdemeanor other than minor misdemeanor, all of which arose out of the same act or transaction, are pending, or against whom charges of misdemeanors of different degrees, other than minor misdemeanor,

all of which arose out of the same act or transaction, are pending shall be brought to trial within the time period required for the highest degree of misdemeanor charged, as determined under division (B) of this section."

Arguing by analogy, the state submitted that the time for trying the misdemeanor charges should be extended to two hundred seventy days when the felony charge arises out of the same act.

Rejecting this argument, this court noted that "[t]here is no provision in the statute, the committee notes, or the case law interpreting the statute" as the state desired. *Id.* at 3. We also emphasized that the speedy trial statute was mandatory and that the state was required to strictly comply with its provisions.

Although the *Dembecki* decision was rendered seven years ago, this court still finds its logic persuasive and considers it binding precedent in our jurisdiction. In this regard, we again note that the language of the statute has not been amended in the period since *Dembecki.* Moreover, the logic of that decision has recently been followed by the Fourth Appellate District in *State v. Leadingham* (June 1, 1989), Scioto App. No. 1749, unreported, 1989 WL 62873.

As to the precedent in the Ninth Appellate District, it should be noted that this line of authority appears to be based upon a misinterpretation of an earlier Supreme Court decision. In holding that the two-hundred-seventy-day period is applicable to both the felony and misdemeanor charges, that court has consistently cited *State v. MacDonald* (1976), 48 Ohio St.2d 66, 2 O.O.3d 219, 357 N.E.2d 40. See *State v. Hearns* (Nov. 27, 1985), Summit App. No. 12093, unreported, 1985 WL 3994; *State v. Leanza* (Sept. 1, 1982), Summit App. No. 10506, unreported, 1982 WL 2746.

However, in *MacDonald,* the Supreme Court was concerned with the application of the triple-count provision in R.C. 2945.71; specifically, the court held that the provision does not apply when the defendant is being held in jail on both state and federal charges. See, also, *State v. Ladd* (1978), 56 Ohio St.2d 197, 10 O.O.3d 363, 383 N.E.2d 579, in which the court held that the provision is likewise inapplicable when two state charges are pending. Although these decisions deal with situations in which more than one charge is pending, they simply are irrelevant to the issue before this court. *MacDonald* does not mandate the conclusion that the longer statutory period always applies when both felony and misdemeanor charges are pending.

This court is aware that this decision places a heavy burden upon the state. In many instances in which both types of charges are pending against the defendant, the state may simply be unable to proceed to trial on all of the charges before the end of the ninety-day period. Under these circumstances,

the state could be forced to allow the time to run out as to the misdemeanors, instead of risking going forward too quickly on the felonies. As a practical matter, it is difficult to discern what interest is being served by this requirement. Certainly, the defendant would not be prejudiced if the longer time period was applicable to all of the charges.

Nevertheless, the inclusion of R.C. 2945.71(D) in the speedy trial statute shows that the legislature considered this type of issue and chose not to address the specific question raised by the facts of this case. While we may question the wisdom of this decision, it is not the function of this court to read such a rule into the statute when it clearly was not intended.

█ Accordingly, even though the indictment in this case contained seven felony charges, the state was still required to bring appellant to trial on the four misdemeanor charges within the statutory limit of ninety days. As was stated earlier, this limit was exceeded by twenty days. Pursuant to R.C. 2945.73(B), this would require the dismissal of these four charges, unless the running of the time limit had been tolled sometime during this period.

The majority of the delay in this case was caused by a six-week continuance. The trial court granted this continuance at the conclusion of the preliminary hearing on April 30. In postponing the trial until June 15, the court stated that the additional time was needed to give appellant a sufficient opportunity to prepare her defense. This reasoning was also set forth in a journal entry issued by the court after the hearing.

The time limit for bringing a person to trial under the statute can only be extended for a limited number of reasons. These reasons are stated in R.C. 2945.72. Section (H) of this provision states that the time can be extended for the following:

"The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion * * *."

Appellant correctly notes that she never requested the continuance the trial court granted; in fact, when the issue was first raised, appellant specifically stated that she was prepared to proceed to trial at the time. Instead, the transcript of the preliminary hearing clearly shows that the question of a possible continuance was initially raised by the state.

Nevertheless, the circumstances in this case patently support the conclusion that the continuance granted by the trial court was necessary to protect appellant's due process rights. First, the record before this court demonstrates that appellant's decision to represent herself was not made until sometime shortly before the preliminary hearing on April 30. Two days

earlier, the trial court had issued a journal entry, stating that a hearing had been held on the 27th. According to the entry, appellant had stated at the time that her attorney was presently on vacation, but that he would be able to attend the hearing on April 30.

Second, this court also notes that the discovery process was not completed until the day of the preliminary hearing. On that date, the state provided appellant with the various materials it had concerning the case. As a result, appellant would have had only three days in which to study these materials and prepare her defense had the continuance not been granted.

Given these circumstances, the trial court could justifiably conclude that, as a practical matter, appellant would be denied a fair trial if the date of the trial was not postponed. Although appellant was obviously acquainted with the facts, the complexity of the case was such that even a qualified attorney would have faced serious difficulties in attempting to prepare a defense in three days.

Pursuant to this analysis, this court holds that the continuance granted by the trial court was both necessary and reasonable, and that the running of the statutory time limit for bringing appellant to trial was tolled during the period. And since the continuance was for more than twenty days, appellant was clearly brought to trial on the misdemeanor charges within the ninety-day limit. Thus, her argument that the four misdemeanor charges should have been dismissed on speedy trial grounds is without merit.

In her second issue under this assignment, appellant contends that she should only have been charged with one count of dereliction of duty. Appellant maintains that a separate animus did not exist as to each of the four checks. This argument is apparently based upon the position that the crime occurred when she deposited the four checks together to cover part of the second shortage of funds. However, as will be seen below, appellant's conviction on these four charges was predicated upon her failure to record, in the duplicate receipts book and the cash journal, the fact that she had received these checks. Thus, the jury could properly find that appellant had a separate animus each time she failed to record her receipt of each check.

Finally, appellant asserts that her conviction on these four counts was against the manifest weight of the evidence and contrary to law. Specifically, appellant argues that her actions concerning the four checks do not constitute a violation of the applicable statute.

Under R.C. 2921.44(E), a public official is guilty of dereliction of duty when she recklessly fails to perform a duty imposed by law. The duty appellant

allegedly failed to perform in this case is stated in R.C. 117.17, which *at the time these alleged offenses occurred,* provided:

"A public officer or employee who collects or receives payments due the public shall deposit all public moneys received by him with the treasurer of the taxing district once every twenty-four consecutive hours. If such officer or employee receives public moneys for a taxing district of which he is not an officer or employee, he shall during Saturday of each week pay to the proper office of such district the amount so received during the current week."

As a preliminary matter, this court notes that the present statute has been amended and renumbered. The new provision, R.C. 9.38, states that a public officer must deposit the moneys "with the treasurer of the public office *or properly designated depository* once every twenty-four hours." (Emphasis added.)

The assistant state auditor, who testified on behalf of the state at trial, had participated in the 1984 audit of the township. During the course of her testimony, the auditor specifically referred to R.C. 9.38, stating that the provision required the clerk to deposit all funds into the township account within twenty-four hours of receiving them. The auditor then testified that, as to the four checks in question, appellant had failed to follow this procedure.

In instructing the jury on the dereliction of duty offense, the trial court told them to disregard the auditor's reference to the new provision. The court then paraphrased the old statute, concluding with the following statement:

"In other words you are to determine the holding of public money by an official and her failure to pay the same into the treasury. You have to determine whether that was done or not into the treasury."

While the old provision was certainly the applicable statute in this case, the trial court's paraphrase and use of the term "treasury" in the foregoing quote conflicted with the former wording of the provision. Unlike the new statute, R.C. 117.17 did not require any public official to deposit any public funds received into a designated depository within a certain time period. Instead, R.C. 117.17 only required a public official to give all public funds in her possession *to the treasurer* within twenty-four hours of receipt. As worded, the old provision clearly did not attempt to also regulate the actions of the treasurer after she had received the funds.

During her testimony, the assistant auditor also stated that appellant had failed to record the receipt of the four checks at issue in the duplicate receipts book and the cash journal. While these actions are certainly inconsistent with normal accounting procedures and raised the spectre of possible misappropriation of funds, it was not R.C. 117.17 which required her, as treasurer, to

record the transactions or to deposit the funds into the "treasury" within a certain time period. Once appellant received the funds, the statute was no longer applicable to her. Thus, while appellant may have been guilty of violating something, it was not R.C. 117.17.

Pursuant to this analysis, the trial court erred, as a matter of law, in allowing the four dereliction of duty charges to go to the jury. None of the actions taken by appellant in relation to the four checks constituted a violation of the charged offense. Thus, the final argument under appellant's sixth assignment has merit.

■ In her seventh assignment, appellant argued that the trial court erred in not granting her first motion for a new trial, since she was effectively denied her right to counsel and a fair trial. This argument is based upon appellant's assertion that she was not qualified to act as her own counsel and, thus, was unable to competently protect her rights during the trial. According to appellant, the trial court should have noted her incompetency and appointed counsel to protect her rights.

As noted earlier, appellant specifically stated her desire to represent herself. While the trial court did not follow the technically correct procedure in accepting the waiver, there is nothing in the record showing that appellant was not as competent as any other laymen who choose to represent themselves. Thus, appellant's argument is not sufficient grounds for reversal.

Under her eighth assignment, appellant again contends that the trial court erred in not granting her a new trial. In this assignment, appellant simply restates her contention that the trial court should have dismissed all of the eight charges which formed the basis of her conviction. This argument has already been addressed in assignments two through eight, some being found with merit and some without accordingly.

Also under this assignment, appellant asserts that a new trial should have been granted on the grounds of newly discovered evidence. As noted earlier, this argument was presented in appellant's second motion for a new trial, which was submitted after the first appeal had been filed. Upon remand from this court, the trial court dismissed the motion, finding that there was no evidence that appellant was "unavoidably prevented" from discovering this evidence before the first trial. Appellant does not address the merits of this holding, and there is nothing on the face of the record which contradicts it.

■ In her next assignment, appellant maintains that a new trial should have also been granted on the grounds of prosecutorial misconduct. In support of this argument, appellant asserts that the record contains multiple

examples of misconduct. Yet, the only one appellant specifically refers to in her brief is the prosecutor's use of the word "stolen" in describing her actions. Appellant contends that the submitted evidence does not support this statement.

Technically, none of the witnesses stated that appellant had stolen the money. However, the testimony clearly implied that appellant misappropriated certain funds. Thus, the prosecutor's remarks were inferentially based on facts which were presented at trial. This assignment is without merit.

Appellant's final assignment concerns the trial court's decision on the state's motion to withhold her retirement benefits for restitution. This decision is the subject matter of appellant's third appeal. Pursuant to R.C. 2921.41(C)(2)(a), if a public official is convicted of theft in office, the trial court can order the appropriate state retirement fund to withhold the benefits, so that they can be used as restitution for the stolen funds. In this case, after holding two hearings on the matter, the court ordered that the benefits be withheld, but also stayed the release of the funds while this appeal is pending.

Appellant correctly asserts that at the conclusion of the second hearing, the trial court and the attorneys for each side agreed that the benefits should not be paid out as restitution to the township until this appeal was concluded. She now insists that the court's subsequent journal entry conflicts with this agreement. This is not the case. In its judgment, the trial court decreed that a withholding order be issued to the retirement association for the mandated restitution. The trial court also ordered that the restitution be stayed pending the outcome of appellant's appeal. Although the language of the court is slightly different, its entry does not conflict with the agreement of the parties.

In accordance with the preceding opinion, the judgment of the trial court is hereby reversed and the case is remanded for a new trial as to the felonies, Counts 4, 5, 6, and 7 of the indictment. It is further ordered that, upon remand, the trial court enter an order of dismissal as to the misdemeanors, Counts 8, 9, 10, and 11 of the indictment.

*Judgment reversed*
*and cause remanded.*

CACIOPPO, J., concurs.

FORD, J., concurs separately.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting by assignment.

FORD, Judge, concurring.

Although I generally concur with the majority's treatment of the appellant's assignments of error, I am compelled to express a divergence from part of its analysis of the sixth assignment of error, which difference does not affect the mandate or outcome in this particular case.

My concern deals with the majority's rationale of the speedy trial issue in appellant's first argument in the sixth assignment of error in which she advances the contention that she was not tried on misdemeanor charges of dereliction of duty, being Counts 8 through 11, in compliance with Ohio's speedy trial statute, R.C. 2945.71. The majority relies on the authority of *State v. Dembecki* (Apr. 15, 1983), Portage App. No. 1273, unreported, 1983 WL 6239.

In *Dembecki, supra,* the defendant was charged in the same indictment with two misdemeanors of the first and second degree, assault and resisting arrest, which, under R.C. 2945.71(B)(2), independently were required to be brought to trial within ninety days after arrest. The defendant then was also charged under the same indictment arising from the same incident with escape, a felony of the fourth degree. The trial was conducted beyond ninety days, but within two hundred seventy days.

Expressing the rationale that the speedy trial statute is mandatory and that strict compliance was the standard, this court then concluded that the state was bound to strictly comply with the statute and bring the defendant to trial on the misdemeanor charges within ninety days, or, in effect, dismiss the misdemeanor charges in a timely fashion. I am mindful that other Ohio appellate courts have cited *Dembecki* with approval in unreported decisions. See *State v. Branham* (Oct. 8, 1987), Paulding App. No. 11–85–9, unreported, 1987 WL 18223, and *State v. Leadingham* (June 1, 1989), Scioto App. No. 1749, unreported, 1989 WL 62873.

At the time that this writer authored the *Dembecki* decision, the prevailing attitude was that the speedy trial statutory concepts were to be applied rather rigidly and inflexibly. During the intervening years, this view has softened to some degree in a number of Ohio Supreme Court and appellate opinions, although strict construction remains the hallmark.

At a later time, this writer was persuaded to a countervailing position on this issue by what he perceives to be a logical and tenable set of considerations which he has opined. A few of those factors are that in a situation in which a given defendant is charged with a combination of misdemeanor and felony charges arising out of the same factual circumstances, the state often will have a greater burden in preparing the felony matter for trial and, generally, there is no express or inherent prejudice resulting to the defendant

in preparing for such a hybrid set of charges for trial purposes. Further, a reading of the pertinent statutory sections *in pari materia* is not violative of constitutional or legislative construction standards. Consequently, this writer and this court applied the opposing sentiment, citing with favor *State v. Downey* (Feb. 9, 1983), Summit App. No. 10889, unreported, 1983 WL 3972, in *State v. Fetzer* (July 20, 1990), Portage App. No. 2085, unreported, 1990 WL 103954. We stated there, at 4:

"Ohio's speedy trial statutes prescribe specific time limits for bringing a criminal defendant to trial. These time limits vary according to the nature of the crime with which the defendant has been charged. In this case, appellant was indicted on two felonies and two misdemeanors of the first degree. When the pending charges include crimes of varying degrees, the longest of the applicable time limits apply to all of the charges. See *State v. Downey* (Feb. 9, 1983), Summit App. No. 10889, unreported."

As a result of the foregoing narrative, this writer is mindful of the tenor of the Supreme Court Rules for the Reporting of Opinions. Rule 2(G), in essence, tells us that unofficially published or unpublished opinions are not considered controlling authority in the judicial district in which they were decided, except when relevant under the law of the case, res judicata or collateral estoppel, or in a criminal proceeding involving the same defendant.

Although this case, in my judgment, does not present the proper predicate or syllogism to address this contradiction, I am mindful that this divergency in our appellate district on that subject should be resolved in the future in a case that crisply presents this issue. The orderly conduct of judicial affairs requires the elimination of this conflict for the benefit of litigants, the bench and bar of our district. It is for this reason that I have submitted this concurring opinion.