The state of Ohio appeals from two judgments of the Darke County Common Pleas Court dismissing all twenty-five counts of appellee Larry W. Johnson's indictment. In case number 97-CA-1441, the state challenges the trial court's dismissal of counts one through twenty-four. In case number 97-CA-1444, the state challenges the trial court's subsequent dismissal of count twenty-five.
The state advances two assignments of error. First, it contends the trial court erred by dismissing counts one through twenty-four of Johnson's indictment on statutory speedy trial grounds. Second, the state claims the trial court erred by dismissing count twenty-five, a RICO count, on the basis of the state's failure to allege at least one felony "corrupt activity."
The present appeal stems from Johnson's operation of a cemetery in Darke County, Ohio, known as Sunset Memory Gardens. A grand jury indicted Johnson on October 24, 1996, on twenty-four counts of failing to properly maintain an endowment care account in violation of R.C. 1721.21. The statute requires that ten percent of the gross proceeds received from the sale of any burial lot, burial right, entombment right, or common burial right must be placed in an endowment care account. Johnson's indictment listed the twenty-four endowment account violations as unclassified felonies. Additionally, the grand jury indicted Johnson on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, a first degree felony.
Thereafter, on March 3, 1997, the state filed a motion asking the trial court to determine whether the twenty-four endowment fund counts were unclassified felonies or misdemeanors. In turn, Johnson filed two motions on April 11, 1997, seeking the dismissal of all twenty-five counts of his indictment. In his first motion, Johnson argued that the twenty-four endowment fund counts were unclassified misdemeanors. He then alleged a statutory speedy trial violation based upon the state's failure to bring him to trial within ninety days. In his second motion, Johnson sought dismissal of count twenty-five, arguing that failure to maintain an endowment fund account does not constitute "corrupt activity" under Ohio's RICO statute.
Following a hearing, the trial court filed a judgment entry on May 1, 1997, declaring the twenty-four endowment fund counts unclassified misdemeanors. In its ruling, the court also granted Johnson's motion to dismiss the twenty-four counts on speedy trial grounds. Specifically, the trial court noted that Johnson was arraigned on November 8, 1997, and that he was not brought to trial on the misdemeanors within ninety days thereafter as required by R.C. 2945.71(B)(2). Finally, the trial court overruled Johnson's motion to dismiss count twenty-five. In its ruling, the court agreed that failure to maintain an endowment fund account cannot constitute a predicate "corrupt activity" under Ohio's RICO law. The court then noted, however, that the violations "would also constitute theft offenses which are specifically designated a[s] predicate offenses for the purposes of O.R.C. sec. 2923.32."
Subsequently, on May 12, 1997, the trial court filed a new judgment entry granting Johnson's motion to dismiss count twenty-five. In support of its ruling, the court noted that under Ohio's RICO law at least one "corrupt activity" must be a felony. The court then concluded that the state could not aggregate the funds allegedly misappropriated under the twenty-four misdemeanor counts to reach the felony theft level. Accordingly, the trial court found no felony act supporting a RICO charge and dismissed the final count of Johnson's indictment. The state then filed timely appeals from both the trial court's May 1, 1997, and May 12, 1997, judgment entries. This court subsequently consolidated the appeals. The state advances the following two assignments of error for our review:
 I. "The trial court erred in determining that counts I through XXIV should be dismissed because of speedy trial violations."
In its first assignment of error, the state contends the trial court should not have dismissed the twenty-four misdemeanor counts from Johnson's indictment because the indictment also included one felony RICO count. More specifically, the state argues that when an indictment includes both felony and misdemeanor counts, the time within which a defendant must be brought to trial extends from ninety days to two-hundred and seventy days.
As the state recognizes, Ohio's courts are split on the issue of whether joining misdemeanor and felony counts in an indictment extends the statutory speedy trial time for prosecution on the misdemeanors. Several courts have concluded that misdemeanors and felonies joined in an indictment all may be tried within the two-hundred and seventy day speedy trial period applicable to felonies under R.C. 2945.71(C)(2). State v. Metheney (1993), 87 Ohio App.3d 562,568; State v. Leeper (Dec. 30, 1993), Harrison App. No. 446, unreported; State v. Browning (Nov. 12, 1991), Butler App. No. CA91-01-009, unreported; State v. Luehrs (Sept. 2, 1987), Lorain App. No. 4163, unreported; State v. Hearns (Nov. 27, 1985), Summit App. No. 12093, unreported. Other courts, however, have concluded that misdemeanor offenses, even though joined in an indictment with felonies, still must be tried within the ninety-day period applicable to more serious misdemeanors under R.C. 2945.71(B)(2).State v. Walton (1991), 77 Ohio App.3d 706; State v. Doane
(1990), 69 Ohio App.3d 638; State v. Lothridge (April 17, 1991), Lorain App. No. 90CA004878, unreported; State v. Dunson (March 20, 1991), Hamilton App. No. C-900218, unreported; State v. Leadingham
(June 1, 1989), Scioto App. No. 1749, unreported; State v.Dembecki (April 15, 1983), Portage App. No. 1273, unreported;State v. Fielder (1994), 66 Ohio Misc.2d 163.
In State v. McDaniel (July 13, 1994), Miami App. No. 93-CA-38, unreported, this court declined to decide what statutory speedy trial time applies when felony and misdemeanor counts are joined in an indictment. Finding the issue not properly raised and inadequately briefed, we did not resolve it. Id. at fn. 3. In the present case, however, the state raised the issue before the trial court and briefed it on appeal. Consequently, the issue is squarely before us.
After reviewing the foregoing authorities, we agree with those courts holding that the inclusion of both felony and misdemeanor counts in an indictment does not extend the statutory speedy trial time applicable to the misdemeanors. In reaching this conclusion, we recognize that "[t]he statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." Statev. Pachay (1980), 64 Ohio St.2d 218, at the syllabus. As we noted above, R.C. 2945.71(B) unambiguously provides that a person against whom a first or second degree misdemeanor charge is pending shall be tried within ninety days. Significantly, we find nothing in the Revised Code authorizing extension of the ninety-day period when a person has a felony charge included in the same indictment.
Most courts resolving the issue before us have looked to R.C.2945.71(D), which provides that when a person is charged with more than one misdemeanor arising out of the same act or transaction, that person shall be tried within the time provided for the highest degree of misdemeanor charged. Those courts extending the speedy trial time to two-hundred and seventy days for all charges when felonies and misdemeanors are included in the same indictment draw an analogy to R.C. 2945.71(D). They reason by analogy that when a person is charged with both misdemeanors and felonies arising out of the same act or transaction, that person shall be tried within two-hundred and seventy days, the time provided for the felonies.
Conversely, those courts holding that the joinder of felonies and misdemeanors in the same indictment does not extend the speedy trial time for the misdemeanors view R.C. 2945.71(D) differently. For example, in State v. Leadingham (June 1, 1989), Scioto App. No. 1749, unreported, the court acknowledged R.C. 2945.71(D)'s speedy trial treatment of various degree misdemeanors, but concluded:
 "Thus, the General Assembly was aware of the possibility of a person being charged with multiple offenses at least two of which could involve different time periods. Because there is a provision dealing with multiple misdemeanors but no provision dealing with a felony and a misdemeanor, we must assume the General Assembly intended, in such a case, for the time limit for the misdemeanor to remain applicable."
See also State v. Walton (1991), 77 Ohio App.3d 706, 713-714, (quoting the foregoing language with approval); State v. Doane
(1990), 69 Ohio App.3d 638 (rejecting an analogy to R.C.2945.71(D) and emphasizing that Ohio's speedy trial statute is mandatory and is to be strictly construed against the state).
Given that Ohio's speedy trial statute must be strictly enforced (Pachay, supra), we are unpersuaded by the state's analogy to R.C. 2945.71(D).The legislature could have enacted a provision similar to R.C. 2945.71(D) to apply when felonies and misdemeanors are joined. Such a provision is conspicuously absent from the Revised Code. We also find unpersuasive the state's citation to State v. Cattee (1983), 14 Ohio App.3d 239, which provides that courts should interpret the speedy trial statute in light of the presumed intention of the General Assembly. As theWalton and Doane courts correctly recognized, the speedy trial statute provides that more serious misdemeanors shall be tried within ninety days and lower-level misdemeanors shall be tried within a shorter time. The statute creates an exception, however, when misdemeanors of varying degree are charged together. The legislature's noteworthy failure to make the same exception when felonies and misdemeanors are charged together leads this court to presume that the General Assembly intended no such rule.
In reaching this conclusion, we remain mindful of the heavy burden placed upon the state when both felonies and misdemeanors are pending against a defendant. As the Doane court recognized:
 "* * * In many instances in which both types of charges are pending against the defendant, the state may simply be unable to proceed to trial on all of the charges before the end of the ninety-day period. Under these circumstances, the state could be forced to allow the time to run out as to the misdemeanors, instead of risking going forward too quickly on the felonies. As a practical matter, it is difficult to discern what interest is being served by this requirement. Certainly, the defendant would not be prejudiced if the longer time period was applicable to all of the charges.
 "Nevertheless, the inclusion of R.C. 2945.71(D) in the speedy trial statute shows that the legislature considered this type of issue and chose not to address the specific question raised by the facts of this case. While we may question the wisdom [of] this decision, it is not the function of this court to read such a rule into the statute when it clearly was not intended."
Doane, supra, at 655.
In a second argument, the state contends that even if the ninety-day statutory speedy trial limit applies to the twenty-four misdemeanor counts, the trial court still erred by dismissing them. More specifically, the state argues that Johnson filed various motions, including a motion for a bill of particulars, that tolled the speedy trial time limit, keeping elapsed time under ninety days. A review of the record, however, demonstrates that the state failed to present this argument to the trial court. It is well settled that arguments not raised before the trial court need not be considered on appeal. State v. Coleman (1988),37 Ohio St.3d 286, 294; State v. Douglas (1989), 66 Ohio App.3d 788,790. Accordingly, we need not decide whether Johnson's various motions tolled the speedy trial period, and we overrule the state's first assignment of error.
 II. "The trial court incorrectly dismissed count XXV of the indictment when it ruled that there were no predicate offenses under which the defendant could be prosecuted."
In its second assignment of error, the state contends the trial court erred by dismissing count twenty-five from Johnson's indictment.
In a May 12, 1997, judgment entry, the trial court recognized that to support a RICO conviction one of the incidents or "corrupt activities" forming a "pattern of corrupt activity" must be a felony under Ohio law. See R.C. 2923.31(E). The court also noted that counts one through twenty-four of Johnson's indictment alleged violations of R.C. 1721.21 for failure to maintain an endowment fund account, a misdemeanor offense that is not defined as a "corrupt activity" under Ohio law. In its earlier May 1, 1997, judgment entry, however, the trial court had reasoned that evidence supporting the endowment-fund charges also might be sufficient to prove conduct constituting felony theft, which is identified as a "corrupt activity" under Ohio law. Nevertheless, in its May 12, 1997, ruling dismissing count twenty-five, the trial court explained that the state could not "aggregate the total funds misappropriated [under counts one through twenty-four] to reach the level of a felony theft offense." Consequently, finding no felony act supporting count twenty-five, the trial court dismissed the count from Johnson's indictment.
In its brief to this court, the state argues that the trial court erred because a defendant's felony "corrupt activities" need not be charged as separate counts in order to support a RICO conviction. Additionally, the state argues that dismissal was improper because the trial court could not know, without having heard evidence at trial, whether any of the individual violations alleged in counts one through twenty-four also constituted felony theft and supported a RICO conviction. We begin our analysis of this assignment of error with a brief review of R.C. 2923.31, et seq., Ohio's "corrupt activity" statute, as it existed at the time of Johnson's offenses. R.C. 2923.32(A)(1) provides that: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C.2923.31(E) defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E) also states that "[f]or the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code [engaging in a pattern of corrupt activity], at least one of the incidents forming the pattern shall constitute a felony under the laws of this state * * *." R.C. 2923.31(I)(2)(b) identifies as "corrupt activity" a number of statutory violations, including any violation of R.C.2913.02, Ohio's theft statute, "when the proceeds of the violation exceeds five hundred dollars." The same provision also identifies as a "corrupt activity" any combination of certain statutory violations, including theft, "when the total proceeds of the combination of violations * * * exceeds five hundred dollars."
The foregoing provisions demonstrate that two or more incidents of theft may support a conviction under R.C. 2923.32 for engaging in a pattern of corrupt activity if at least one theft forming the pattern is felony theft under R.C. 2913.02. Furthermore, we agree with the state's argument that uncharged conduct may be used to establish a "pattern of corrupt activity." As we noted above, R.C. 2923.31(E) defines a "pattern of corrupt activity" in relevant part as "two or more incidents of corrupt activity, whether or not there has been a prior conviction * * *." (emphasis added). Nothing in the statute requires a defendant to be separately indicted for, or convicted of, the underlying corrupt activity. The state simply must produce evidence establishing beyond a reasonable doubt that the defendant engaged in conduct constituting two or more incidents of "corrupt activity."[1]
With these requirements in mind, we turn now to an analysis of count twenty-five of Johnson's indictment and a bill of particulars filed by the state. Count twenty-five alleged that on or about December 9, 1987, through October 31, 1995, Johnson
 "did, while being employed by, or associated with, any enterprise, conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity; and did, through a pattern of corrupt activity, or the collection of an unlawful debt, shall [sic] acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property, to-wit: did operate, manage, acquire, maintain or control Sunset Memory Gardens while failing to make deposits into Endowment Care Funds, this being a violation of Section 2923.32 of the Ohio Revised Code and being a felony of the first degree."
In a subsequent bill of particulars, the state provided the following information:
 "The State of Ohio intends to prove that Larry W. Johnson, either individually or as an officer, agent, or employee of Heritage Four, on or about December 9, 1987, through October 31, 1995, and thereafter, did fail to make deposits into the endowment care account required to be maintained by a cemetery known as Sunset Memory Gardens as operated by Heritage Four in Darke County, Ohio, and thereby did commit theft offenses as set forth in R.C. 2913.02 of the Revised Code, which theft offenses were conducted through a series of consumer transactions as set forth in Counts I through XXIV of the Indictment."
Significantly, the first half of count twenty-five of the indictment closely tracks the language of R.C. 2923.32(A)(1) and (A)(2), which provide:
 "(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.
 "(2) No person, through a pattern of corrupt activity or the collection of an unlawful debt, shall acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property."
In our view, the language preceding "to-wit" in the foregoing indictment alleges a violation of R.C. 2923.32(A)(1) and (A)(2), engaging in a pattern of corrupt activity. The indictment is drafted in the words of the statute as is permitted by Crim.R. 7(B) and R.C. 2941.05. Admittedly, the language following "to-wit" suggests that the state initially planned to use Johnson's alleged violations of the endowment-fund statute (counts one through twenty-four) as the "corrupt activity" supporting count twenty-five's RICO charge. This language, however, constituted mere surplusage. The first half of count twenty-five, standing alone, gave Johnson notice that the state intended to prove his engagement in a pattern of corrupt activity in violation of R.C. 2923.32. The language tracked the words of the statute and gave Johnson notice of the offense charged. The state's gratuitous inclusion of additional language in the second half of count twenty-five does not render the count defective.
Moreover, after discovering that Johnson's endowment-fund violations were misdemeanors and not defined under the Revised Code as "corrupt activities," the state provided a bill of particulars in which it identified "theft" as the "corrupt activity" supporting a RICO conviction. In our view, the bill of particulars clarified the indictment. In its bill of particulars, the state said its evidence would show that Johnson's conduct of failing to maintain the endowment fund account constituted the "corrupt activity" of theft. Thus, the state clarified the indictment and informed Johnson of specifically what "corrupt activity" it intended to prove. Consequently, we find no fatal defect in count twenty-five of Johnson's indictment.
In short, the indictment's vital language recited a violation of R.C. 2923.32, engaging in a pattern of corrupt activity. The bill of particulars then identified theft as the corrupt activity the state intended to prove. As we noted above, uncharged conduct (i.e. theft) may constitute the "corrupt activity" underlying a RICO charge. The state simply must prove beyond a reasonable doubt that the defendant's uncharged conduct violated a statute and that the statutory violation was a "corrupt activity." Furthermore, the bill of particulars identified Johnson's failure to place funds in an endowment fund account as the manner in which the state intended to prove theft.
Finding no facial defect in count twenty-five of Johnson's indictment, we turn now to the trial court's May 12, 1997, judgment. Prior to filing its judgment entry, the trial court held a hearing concerning Johnson's motion to dismiss count twenty-five. At the hearing, Johnson argued that the only "corrupt activities" were the twenty-four misdemeanor counts of failing to maintain an endowment fund account. In response, the state suggested that Johnson's conduct also constituted theft, which is defined as a "corrupt activity" under R.C. 2923.31. The trial court agreed but questioned whether Johnson's conduct "would reach the monetary level sufficient to make [the theft] a felony." The state then responded: "The statute under corrupt activity when it defines monetary value allows aggregating of claims so long as those aggregated claims exceed $500." Later, the state added: "* * * [U]nder the definition of corrupt activity, 2923.31(I)(1)(b) [sic], it talks about the proceeds of the violation when they aggregate once they exceed $500 you have the minimum threshold amounts. You still need to have two violations, two predicate offenses, but if * * * they exceed $500 you have met the minimum threshold requirement for the pecuniary amount; and those can be charged or uncharged offenses."
In its May 12, 1997, judgment entry, the trial court disagreed, stating:
 "The State argues that, although the predicate violations of O.R.C. 1721.21 [endowment-fund account violations] may be misdemeanors, the State should be permitted to aggregate the total funds misappropriated to reach the level of a felony theft offense.
 "The court finds that the statute and the case law require at least one of the predicate acts to be a felony. State v. Rich, 87 Ohio App.3d 194 (1993), State v. Morgan, 71 Ohio St.3d 178 (1994). The State's position would require the Court to try twenty four misdemeanor cases to determine if the amount of funds misappropriated reached a felony level. This is contrary to the language and intent of the statute."
The state's argument before the trial court rested upon portions of R.C. 2923.31(I)(2)(b). As we noted above, that provision defines as a "corrupt activity" any violation of certain Revised Code sections, including R.C. 2913.02, Ohio's theft statute, "when the proceeds of the violation exceeds five hundred dollars." The provision also defines as a "corrupt activity" any combination of violations when the total proceeds of the combination of violations exceeds five hundred dollars. Relying upon this language, the state argued that it could aggregate Johnson's violations and meet the "minimum threshold amount" to support a RICO conviction.
After reviewing the statute, however, we find the state's reliance upon R.C. 2923.31 misplaced. The provision definescorrupt activity as, among other things, any combination of theft offenses when total proceeds from the violations exceed $500. The statute does not make the corrupt activity a felony when the total proceeds from the violations exceed $500. Simply stated, R.C.2923.31's $500 threshold transforms certain conduct into "corrupt activity." It does not transform corrupt activity into a felony. R.C. 2923.31(E)'s independent requirement that at least one incident of "corrupt activity" must be a felony still remains. Consequently, the trial court properly found that the state could not aggregate misdemeanor thefts to meet R.C. 2923.31(E)'s felony requirement.
Despite this conclusion, the trial court erred in dismissing count twenty-five from Johnson's indictment. As we explained above, the indictment's crucial language properly alleged a violation of R.C. 2923.32, engaging in a pattern of corrupt activity. The bill of particulars identified the underlying "corrupt activity" as theft and further identified Johnson's failure to place funds into an endowment account as the manner in which Johnson committed theft. The trial court's conclusion that the state cannot aggregate misdemeanor theft violations does not invalidate the indictment. It means only that the state must present evidence at trial demonstrating a felony theft without combining incidents to reach the required monetary amount. As the state recognizes in its brief to this court, "the trial court did not have a sufficient evidentiary bas[is] to rule in the defendant's favor as the trial court did not know whether any of the individual violations [in] counts I through XXIV" constituted felony theft and met R.C. 2923.31's definition of corrupt activity. Accordingly, we sustain the state's second assignment of error to the extent it challenges the trial court's dismissal of count twenty-five.
Having determined that the trial court properly dismissed counts one through twenty-four, in case number 97-CA-1441 we affirm the trial court's May 1, 1997, judgment. However, having determined that the trial court erred by dismissing count twenty-five from Johnson's indictment, in case number 97-CA-1444 we reverse the court's May 12, 1997, judgment and remand that cause for further proceedings.
WOLFF, J. and FAIN, J., concur.
Copies mailed to:
Jonathan P. Hein
William R. Zimmerman
Hon. Lee A. Bixler
[1] Cf. 18 U.S.C. § 1961(1), which defines "predicate acts" constituting "racketeering activity" under federal RICO law as acts "indictable" or "punishable" under various federal criminal laws and as acts "chargeable" under various state criminal laws."Section 1961 * * * contains no requirement that a defendant actually have been convicted of the predicate offenses. It is not even necessary that the defendant be actually charged by government authorities or indicted by a grand jury. Rather, it is sufficient if the defendant could have been indicted, i.e., if he committed acts that met the essential elements of the predicate criminal offenses." Rakoff Goldstein, RICO Civil and Criminal Law and Strategy (1997) 1-17, Section1.04[1].