The majority has found that the trial court did not err in failing to appoint counsel to represent appellant at trial and in refusing to grant a continuance in order for appellant to obtain counsel. The basis of such finding is the trial court's determination that appellant was not indigent and that she had had ample opportunity to hire an attorney, and the majority's determination that appellant impliedly waived her right to counsel. Chronology is important to the understanding of why a reversal in this cause is in order.
In June 1996, appellant was charged with intimidation of a public official. On August 6, 1996, Kenneth Lawson, from the law firm of Lawson Gaines and who apparently was representing appellant in this matter, sent a letter to the Area II Court in which he stated that neither he nor his firm represented appellant in this matter and that appellant no longer wished to be represented by the firm due to "a conflict of legal strategy."
Appellant was indicted on November 14, 1996. Thereafter, Donald Moser was appointed as her counsel. A notice of hearing filed by the trial court on January 15, 1997 states in relevant part that:
 This matter came before the Court on an Order for Pretrial Conference on January 14, 1997. At that hearing, it was determined by the Court that the defendant is not without funds to hire an attorney and, consequently, is not indigent. The defendant disclosed to the Court that she had paid the law firm of Lawson and Gaines $2,500 to represent her and this money had been borrowed on a home-equity loan from Home Federal Savings and Loan Association. She indicated that she had retained Mr. Lawson and a Mr. Harris appeared in Area Two County Court and continued the preliminary hearing. He never appeared at the subsequent hearing and somehow the County Court Judge appointed counsel for the defendant.
 The defendant indicated she had demanded that the law firm represent her or return her money which, according to the defendant, has been refused.
* * *
 The defendant Lois Westfall is ordered to appear at [the February 4, 1997 pretrial] hearing and Attorney Lawson or Attorney Harris are hereby ordered to appear to explain to the Court the fee dispute between the law firm and the client. This Court hereby relieves Donald Moser, the appointed attorney, as counsel in this case due to the fact that the defendant is not indigent. The Court further considers the law firm of Lawson and Gaines to be the retained attorneys for this defendant until such time as properly relieved by this Court. (Emphasis added.)
By order filed February 5, 1997, the trial court relieved Kenneth Lawson and the law firm of Lawson Gaines as counsel for appellant. The order states that "[a]t the [February 4, 1997] hearing the defendant indicated she no longer desired Mr. Lawson to represent her and Mr. Lawson refunded a $2,500.00 retainer * * *. The Court again reiterated to the defendant that she was not indigent and had the funds to hire an attorney and the Court would not appoint her counsel." The order set the trial for February 26, 1997. By entry filed the same day, the trial court advised appellant "to retain other legal representations, prior to her scheduled trial date of February 26, 1997." Thus, as of February 5, 1997, appellant was for the first time without counsel, either retained or appointed, and was three weeks from trial.
The record shows (as revealed by the February 26, 1997 appended colloquy between the trial court and appellant) that on February 25, 1997, on the eve of the trial, the trial court personally talked to appellant, who told the court she did not have an attorney as she could not afford one. The trial court informed her that it did not consider her to be indigent and that it would not appoint an attorney for her.
The next day, appellant appeared at trial without an attorney and asked that the case be continued. In an in-chambers hearing, appellant indicated that she had not obtained legal representation, but had been trying to obtain representation through Access to Justice, an organization located in Columbus, Ohio. The trial court then briefly recessed to call Access to Justice. After the call, the court noted that the organization had been trying to find an attorney for appellant since February 12, 1997, but nevertheless concluded that appellant's efforts to hire an attorney had been inadequate and that she had had ample opportunity to hire an attorney. Appellant protested, stating that she wanted to be represented by an attorney and that she had tried very hard to retain an attorney but that she could not force them to represent her when, like her former appointed attorney, they did not want to represent her. The trial court reiterated that she was not indigent, denied appellant's motion for continuance, and proceeded with the trial that day.
After the state rested its case, a colloquy ensued between the trial court and appellant regarding the court's failure to appoint an attorney for her. The court stated that in light of the $2,500 she had gotten back from Kenneth Lawson, she was not indigent and thus not entitled to an appointed attorney. Appellant stated that she had borrowed the $2,500 from a financial institution, that she was still paying interest on it, and that the institution refused to lend her more money to retain an attorney.[2] At the conclusion of the trial, appellant was found guilty as charged.
In her second assignment of error, appellant contended that the trial court erred in failing to appoint counsel to represent her. The majority disagreed, finding instead that the trial court reasonably concluded appellant was able to obtain counsel but instead chose to unnecessarily delay the proceedings.
Crim.R. 44(A) states that "where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him * * *, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."
In the case at bar, it is undisputed that appellant was never fully advised of her right to appointed counsel. Nor could the record support, and the majority does not so contend, a finding that appellant knowingly, intelligently, and voluntarily waived her right to counsel. To the contrary, the record shows that the trial court, at the beginning of the trial, summarily reiterated its earlier determination that appellant was not indigent and thus was not entitled to appointed counsel.
However, "[t]he requirement that an accused be given appointed counsel is not limited to those with financial disability." State v. Haag (1976), 49 Ohio App.2d 268, 271. As the Ohio Supreme Court held in Tymcio, 42 Ohio St.2d at 43-45:
 Clearly, a bare finding of nonindigency does not explain why an accused, such as the defendant in this case, who represents that he has been unable while under bond to obtain adequate counsel with his available resources because of demands for substantial cash retainers, must stand alone.
* * *
 The same is true of Ohio Crim.R. 44(A) and R.C. 2941.50(A), neither of which employs the term "indigency." Rather, both make reference to one who is "unable to employ counsel."
 To make the right to the assistance of court-appointed counsel a factual reality, the determination of need must turn, not upon whether an accused ought to be able to employ counsel, but whether he is in fact able to do so. * * *
 We hold that a preliminary determination of indigency can not [sic] be permitted to foreclose a redetermination of eligibility for assigned counsel, when, at a subsequent stage of a criminal proceeding, new information concerning the ability or inability of the accused to obtain counsel becomes available. It is then the duty of the trial court to inquire fully into the circumstances impinging upon the defendant's claimed inability to obtain counsel, and his consequent need either for assistance in employing counsel, or for the assistance of assigned counsel. When an accused is financially able, in whole or in part, to obtain the assistance of counsel, but is unable to do so for whatever reason, appointed counsel must be provided. In such case, appropriate arrangements may subsequently be made to recompense appointed counsel for legal services rendered.[3] (Emphasis added.)
The majority concluded that having made the inquiry required by Tymcio, the trial court did not err in failing to appoint counsel to represent appellant. It is this writer's opinion that the majority misread Tymcio. Contrary to the majority's opinion, Tymcio requires that the trial court fully inquire into a defendant's ability to obtain counsel. The record clearly shows that the trial court never fully inquired into the circumstances impinging upon appellant's claimed inability to obtain counsel. While appellant tried to explain to the trial court why she had been unable to obtain counsel, the trial court summarily rejected her explanations on the basis she was not indigent.
The majority notes that appellant had not hired counsel by the February 4, 1997 pre-trial hearing. However, the trial court's January 15, 1997 notice of hearing unequivocally stated that Kenneth Lawson was to be appellant's retained attorney "until such time as properly relieved by [the trial court]." Kenneth Lawson was not relieved until February 5, 1997. The majority also states that even after the February 4, 1997 hearing, appellant still waited another week before contracting Access to Justice. While the record shows that the organization had been trying to find her an attorney since February 12, 1997, this does not mean that appellant had not tried to first contact local attorneys. In fact, some of appellant's statements to the trial court suggest that she did just that, albeit unsuccessfully.
In light of Crim.R. 44(A) and the supreme court's ruling in Tymcio, I believe the trial court erred in refusing to appoint counsel for appellant.
In her first assignment of error, appellant argued the trial court erred in refusing to grant a continuance in order for appellant to obtain counsel. The majority correctly stated that the standard of review regarding a trial court's decision to grant or deny a continuance is abuse of discretion. However, it is also well-established that pursuant to R.C. 2945.72(H), a trial court may grant a continuance upon its own initiative as long as it is reasonable. State v. King (1994), 70 Ohio St.3d 158,162. While appellant, although then pro se, could have moved for a continuance on the eve of the trial when she told the trial court she didn't have counsel, by the same token, the trial court could have sua sponte granted a continuance but did not.
The majority found that, in light of the fact that appellant did not request a continuance until the day of trial and that she was informed six weeks before the trial that she was not entitled to appointed counsel, the trial court reasonably concluded that appellant had been given ample time to hire an attorney and was merely trying to delay the trial. The majority concluded that under this particular set of facts, a waiver of counsel could be inferred.
Crim.R. 44(C) states that "[w]aiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offenses the waiver shall be in writing." This requirement is mandatory. State v. Doane (1990),69 Ohio App.3d 638, 648. Because intimidation of a public official is a serious offense, Crim.R. 2(C), the trial court erred in failing to obtain a written waiver of counsel from appellant.
This court has held, however, that a trial court's failure to obtain a Crim.R. 44(C) written waiver is not prejudicial if a waiver of counsel can be inferred from the facts or circumstances of the case. State v. Steward (June 21, 1993), Fayette App. No. CA89-02-003, unreported, at 2-3. A waiver of counsel may be inferred by the trial court if "a defendant refuses to take effective action to obtain counsel, and on the date of trial requests a continuance in order to delay the trial * * *." (Emphasis added.) State v. Hook (1986), 33 Ohio App.3d 101, 103. "To ascertain whether a waiver may be inferred, the court must take into account the total circumstances of the individual case including the background, experience, and conduct of the accused person." Id.
One of the key factors in cases where waiver was inferred is the defendant's familiarity with the justice system. The record in the case at bar is devoid of any evidence that appellant was familiar with the justice system. A reading of the transcript of the trial during which she represented herself would actually prove she was not.
Nor can the record support a finding that appellant refused to take effective action to obtain counsel and waited until the day of the trial to request a continuance solely to delay the trial. The record makes it patently clear that appellant did not want to go to trial representing herself and that as a result she was trying, unsuccessfully, to obtain the services of an attorney. As appellant explained to the trial court, she had tried very hard to retain an attorney but could not force them to represent her against their wishes. It is this writer's opinion that the majority improperly equated appellant's unsuccessful efforts to a refusal to take effective action to obtain counsel.
The trial court believed, and the majority agreed, that appellant was "horsing" around and was simply trying to delay the proceedings. A careful review of the record clearly shows that appellant only had a mere three weeks before trial to find an attorney after the court dismissed her appointed counsel and allowed her retained attorney to withdraw. Rather than showing that appellant was "horsing" around, the record shows that the trial court lost patience with appellant and forced her to go to trial representing herself. The result was detrimental to appellant.
In light of the foregoing, I believe that the majority erred in finding that a waiver of counsel could be inferred, and that the trial court erred in denying appellant a continuance. I therefore dissent and would remand the cause to the trial court for a new trial.
 APPENDIX
On February 26, 1997, appellant appeared for trial and the following colloquy occurred:
 BY THE COURT: Ok. Ok, this is case number — CR96-09-0932, State of Ohio v. Lois Westfall. This is the morning of trial. The court is in chambers talking with the prosecuting attorney, Mr. Dan Gattermeyer, and Mrs. Westfall, who is representing herself. Is that correct, Mrs. Westfall?
MRS. WESTFALL: What, please? I'm sorry.
BY THE COURT: You've got to listen. Ok?
MRS. WESTFALL: Ok.
BY THE COURT: Alright. Your — you have no lawyer?
MRS. WESTFALL: No, sir.
 BY THE COURT: Ok. You can — then you're — you're going to go to trial and — and defend yourself. Is that correct?
 MRS. WESTFALL: No, at this point I'm still trying to get someone.
 BY THE COURT: Well, Mrs. Westfall — MRS. WESTFALL: (Unclear, two talking) — so I'm — I'm not aware of the proceedings except what I read and it's not very explanatory to me, but anyway — at this moment I do not have an attorney. I have an organization out of the State of Ohio, they're trying to get me one in Hamilton County. The last conversation was about three o'clock yesterday. They may have someone today. Of course, they can't reach me.
BY THE COURT: What organization are you talking about?
 MRS. WESTFALL: Uh it's uh — oh — Access to Justice. It's a group of attorneys in Columbus that has the — it's a national — BY THE COURT: What's their phone number?
MRS. WESTFALL: Just a moment, I — I have their business card.
 BY THE COURT: When did you first start contacting these people?
 MRS. WESTFALL: It has been a while, but — as far as any Columbus, Ohio, conversations yesterday was my first day. I'm working with a Mr. Passmore (sic) that you saw here last time I was in.
BY THE COURT: Mr. who?
MRS. WESTFALL: A Mr. Passmore.
BY THE COURT: What is his situation, who is he?
 MRS. WESTFALL: He — he is an associate for membership in this organization.
BY THE COURT: Steve Hughes?
MRS. WESTFALL: Yes, he is — that's their 1-800 number.
 BY THE COURT: Let me see — let me see what number you've got there.
MRS. WESTFALL: What, please?
BY THE COURT: What number (unclear)?
MRS. WESTFALL: It's the 1-800-464-2266.
BY THE COURT: 2266?
MRS. WESTFALL: Yes.
 BY THE COURT: Ok, Dan, we're going to go off the record for — we'll go back on in a few minutes.
Record stopped — back on record)
 BY THE COURT: This is Judge Crehan, I just got off the phone with a — an attorney at Ohio Access to Justice, Inc., a Steven Hughes. Apparently Mrs. Westfall is a member of Ohio Access to Justice, Incorporated which allows her to get a 25% discount from a referral attorney. They've been trying to get — a lawyer for her since February 12th.
 I — this — this court personally talked with Mrs. Westfall yesterday, asked her if she had an attorney. She said she did not, that she couldn't afford one. The court reminded her that she received $2,500 from her previous attorney in this — in — in court; that she has property in the county; that the court does not consider her to be an indigent and will not re — and will not appoint an attorney for her.
 The court, after the conversation with Mrs. Westfall, who never told the court about her membership in Ohio Access to Justice, Incorporated — ordered a jury and the jury is now sitting in the courtroom ready to proceed with this case. The court feels that Mrs. Westfall has had ample opportunity to hire an attorney. She has not told the court about her efforts. The court feels that her efforts to hire an attorney are inadequate and the court is not going to continue the case. The court's going to go ahead with the jury selection process and — Mrs. Westfall will simply have to represent herself. Ok.
Mrs. Westfall, anything you want to put on the record?
MRS. WESTFALL: Put what on record, sir?
BY THE COURT: Is there anything you want to put on the record?
MRS. WESTFALL: At this point I still have no attorney —
BY THE COURT: Ok.
MRS. WESTFALL: — and I don't think I should represent myself.
 BY THE COURT: As I indicated — as I indicated to you, Mrs. Westfall, you've had ample opportunity to get an attorney.
 MRS. WESTFALL: (Inaudible) money. I've had the opportunity, right.
 BY THE COURT: And you are not indigent. And, in fact, you had the opportunity the day you were in here when you received the $2,500 from your previous attorney — there — that was an appointed attorney at that time — you could very easily have hired him, who — he knew this case and I indicated to you that that might not be a bad idea and you chose not to do that.
 MRS. WESTFALL: He told me — he told me a week before he did not want to be on this case, he did not want to be.
 BY THE COURT: Alright, the way — we're going to go ahead with the jury selection process. Ok? The way this works, Mrs. Westfall, is that the — I will talk with the jury and talk — and develop from them whether or not there's any reason why they can't serve on this jury. I anticipate this case will be over today, it'll be a one day jury trial.
 You — the prosecutor, after I finish talking with the jury the prosecutor will have an opportunity to talk with the members of the jury and to ask them questions and then after that you will have the opportunity to talk with the jury. The idea is to get a fair and impartial jury in this case. Do you understand that?
 MRS. WESTFALL: I do, but it doesn't look like I'm going to get it.
 BY THE COURT: (Unclear). This is a jury that's picked from the registered voters in the State of Ohio — or, I'm sorry, in Butler County. So we're going to go ahead at this point and — and I will walk you through it and I'll — we'll come back here and we'll select — we'll select a jury after we talk with the jury. Ok. You will have challenges for cause which are unlimited in nature — but you have to have a legal reason for doing it and you — also — also have four pre-emptory challenges to the jury, which means that you can excuse anybody on the jury that you want for no reason, for any reason whatsoever. Do you understand?
MRS. WESTFALL: I can — I can what, please?
 BY THE COURT: You can challenge or dis — dismiss someone on the jury — MRS. WESTFALL: Oh.
 BY THE COURT: — for no reason at all if you so desire. Do you understand?
MRS. WESTFALL: I have a problem. May I ask a —
BY THE COURT: What problem do you have?
MRS. WESTFALL: — may I ask a question?
BY THE COURT: Yes, you may ask any question.
 MRS. WESTFALL: On a 320 person (sic) zoning request there was petitions [sic] circulcirculated all over the township, really into a couple of townships, which I understand is not legal. It's supposed to be the township where the change is requested. I'm awfully certain there's some of these people on — on the petition —
BY THE COURT: You can ask —
MRS. WESTFALL: — that are here.
BY THE COURT: — you can ask them.
 MRS. WESTFALL: I do not have my copy. I'd have to be going by memory. I don't think I can make that decision.
 BY THE COURT: You can simply ask them the question — and they'll tell you. You can ask the question.
 MRS. WESTFALL: I would rather have my copy in front of me if I could.
 BY THE COURT: Well — ma'am, I can't help that you don't have your copy with you.
 MRS. WESTFALL: I — I can't live on my memory, it's, you know, after all, who —
 BY THE COURT: I understand. Ma'am, you're going to trial today. Let's go in there and let's pick the jury and the we'll get on with the trial.
Ok, off the record.
(Record stopped)
BAILIFF: Tell him we're on the record.
GENTLEMEN: We're on? We're on the record, Judge.
BY THE COURT: Ok. Mrs. Westfall, are you ready to proceed now?
 MRS. WESTFALL: I'm ready to — you ask me the question and I will answer it.
BY THE COURT: Umhum. Are you ready to proceed?
 MRS. WESTFALL: I guess I have to, I don't feel that I have any choice. I don't have an attorney and I — I — I would need some time because — I think some of these people are on the petition that was against me.
BY THE COURT: Ok. Anything else you want —
MRS. WESTFALL: I — I can be wrong, I don't have my copy.
 BY THE COURT: Alright. Well, you can ask them that question. Ok. Anything else?
MRS. WESTFALL: I — I need my copy so I would really know.
BY THE COURT: Umhum.
 MRS. WESTFALL: I — I'm having to rely on memory and I don't think that's right.
 BY THE COURT: Alright Dan. I'm not going to continue it, I'm not going to continue this — this case for that reason.
 MRS. WESTFALL: Well, what is your problem? I — I — (inaudible) day in court.
 BY THE COURT: My problem is that I've got — my problem — my — my — you — ma'am, you — we've had — this case now is — five months old. We've had pretrials in this case, you've had two attorneys on this case, Don — Mr. Moser and Mr. Lawson. Ok. And I told you —
MRS. WESTFALL: Mr. Lawson never even came to court.
 BY THE COURT: — I told you the last time that you were going to go to trial today if you — whether you have an attorney or not — and you haven't done it. You haven't gotten an attorney. That's your fault. That's not my fault.
MRS. WESTFALL: But I have — I have tried very hard.
 BY THE COURT: It cost the — it costs the county a lot of money to bring a jury in. We have a jury sitting out there right now — and we're going to go to trial today — because in my — in my estimation I think you're just horsing the court around.
MRS. WESTFALL: No, sir, I'm not — I am not.
 BY THE COURT: Then you should have gotten an attorney before today.
MRS. WESTFALL: I can't force them to represent me.
 BY THE COURT: You can pay them to represent you, ma'am, you are not indigent. Ok, let's go — we're going to go out and pick a jury.
(Record in chambers stopped).
The jury was sworn. The trial proceeded, with appellant acting as her own counsel. After the prosecuting attorney rested his case, the following colloquy occurred:
MRS. WESTFALL: — cause me a heart attack. Ok?
 BY THE COURT: I understand. I'll tell you what we're going to do. We're going to take a — a lunch break now, early lunch break.
MRS. WESTFALL: Unhum.
 BY THE COURT: Ok, we're going to — and we're going to come back here at —
 MRS. WESTFALL: That doesn't give me much time since I don't have an attorney.
 BY THE COURT: Ma'am, I told you yesterday you were going to trial today. Ok? Right? Didn't I tell you —
 MRS. WESTFALL: But you did not tell me I wouldn't even have 20 minutes to prepare.
 BY THE COURT: Ma'am, I told you you were going to trial if you didn't have an attorney or not.
 MRS. WESTFALL: I always thought when you did not have an attorney they had to appoint one for you and you're —
BY THE COURT: Not when — (unclear) —
 MRS. WESTFALL: We had one appointed. Why did you kick Mr. Moser off of it?
 BY THE COURT: Because you're not indigent, that's why. We don't supply attorneys to people who —
 MRS. WESTFALL: What do you mean? Do you have — have you — are you judging by my clothes or my checking account?
 BY THE COURT: (Inaudible) — you have rental property, you own property, you —
MRS. WESTFALL: This is 1981[.]
 BY THE COURT: I — and I say you get $2,500 in my office from your other attorney.
 MRS. WESTFALL: I bought that from — I bought that — borrowed — borrowed that from Home Federal. I'm still paying interest on it.
BY THE COURT: Ok, I understand. I will give you until —
 MRS. WESTFALL: And they will not loan me any more money to get another attorney.
 BY THE COURT: I will — I will recess until one o'clock. Ok? One o'clock.
 MRS. WESTFALL: I would like — I would like a recess until tomorrow morning if at all possible.
BY THE COURT: No, I'm not going to do that, ma'am.
MRS. WESTFALL: And tell me why not.
 BY THE COURT: I have — because I have docket tomorrow morning, ma'am. I mean I have to run this court.
MRS. WESTFALL: This is my life, Your Honor.
 BY THE COURT: I gave you the opportunity yesterday. I talked with you myself.
MRS. WESTFALL: I wasn't an attorney yesterday either.
 BY THE COURT: I told you you were going to trial today, ma'am — and I (unclear)
 MRS. WESTFALL: Do you want — do you really want to do this? You're not giving me time to breathe.
BY THE COURT: Ma'am, I told you you were going to trial.
MRS. WESTFALL: I know what you said. I know what you said.
 BY THE COURT: Well, and then I said — I said get an — and I said I advise you to get an attorney.
MRS. WESTFALL: I've been trying, but what can I can do?
BY THE COURT: You won't pay them, that's the problem.
MRS. WESTFALL: I don't — I don't have the money.
BY THE COURT: Ma'am —
MRS. WESTFALL: I don't have the money.
BY THE COURT: Ok.
 MRS. WESTFALL: You're welcome to call those banks. I do not have it.
 BY THE COURT: I'm not going to do that, I'm not going to do that. Do you want to go home and get some stuff?
* * *
 BY THE COURT: Call your friend. I can't tell you how to run your life, ma'am, I'm not going to do that.
 MRS. WESTFALL: Well, you're — you're not letting me run it because you're pinning me down to a schedule.
 BY THE COURT: Ma'am — umhum. Ma'am, this court runs on a schedule — we run on a schedule.
 MRS. WESTFALL: I have my rights — I have my rights and I feel that you're violating them.
 BY THE COURT: And I — you can think what you want, ma'am, I don't think I am. I gave you plenty of opportunity. We've been — this case has been around forever.
* * *
 BY THE COURT: Ma'am, this case is — this — this case is ready for trial. Ok. We — I told you that, this has been set for trial for the last month. Ok. You have — I don't know what you've done, but we're here today to go to trial. Now —
 MRS. WESTFALL: I've heard that and heard it. I'm — I'm asking for a — a technician that's qualified in checking tapes. He said it's a copy. I know it's a — it's a put together copy.
 BY THE COURT: They have the original over there — (unclear). We're going to recess until one o'clock. Ok? One o'clock be back and you tell me whether — whether you want to testify or what evidence you want to put on at that time. Ok? And we'll let the jury — jury hear it. One o'clock back here * * *[.]
[2] The colloquies between the trial court and appellant, which took place before the jury was sworn in and after the state rested its case, are hereafter appended.
[3] R.C. 2941.51 governs payment of appointed counsel and states in relevant part that "if the person represented has, or may be reasonably expected to have, the means to meet some part of the cost of the services rendered to him, he shall reimburse the county in an amount that he reasonably can be expected to pay." R.C. 2941.51(D).