The STATE of Ohio, Appellee,

v.

DURBIN, Appellant.

[Cite as *State v. Durbin* (1992), 83 Ohio App.3d 156.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–285.

Decided Oct. 16, 1992.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Mary Sue Barone,* Assistant Prosecuting Attorney, for appellee.

*Jerome Phillips,* for appellant.

MELVIN L. RESNICK, Judge.

This matter is before the court on appeal from a decision of the Lucas County Court of Common Pleas wherein appellant, Ronald D. Durbin, was found guilty on two counts of passing bad checks, violations of R.C. 2913.11. The facts giving rise to this appeal are as follows.

On November 5, 1990, a "Final Judgment Entry of Divorce" was filed for Linda A. Durbin and appellant. Pursuant to the judgment entry, appellant was ordered to pay Linda Durbin the sum of $102,600 as property division. Appellant was ordered to pay the amount as follows:

"1.) *The lump sum amount of twenty-seven thousand six hundred dollars ($27,600.00) on or before November 1, 1990;*

"2.) The lump sum amount of fifteen thousand dollars ($15,000.00) on or before November 1, 1991;

"3.) The lump sum amount of fifteen thousand dollars ($15,000.00) on or before November 1, 1992;

"4.) The lump sum amount of fifteen thousand dollars ($15,000.00) on or before November 1, 1993;

"5.) The lump sum amount of fifteen thousand dollars ($15,000.00) on or before November 1, 1994;

"6.) The lump sum amount of fifteen thousand dollars ($15,000.00) on or before November 1, 1995." (Emphasis added.)

On October 31, 1990, appellant issued two checks drawn on his Fifth Third Bank account to Linda Durbin, one for $15,000 and another for $12,600, in

compliance with the final judgment entry of divorce. When Linda Durbin attempted to cash the checks, they were returned to her marked "uncollected." Check No. 31607 in the amount of $12,600 was additionally marked "NSF," meaning "nonsufficient funds."[1] Approximately two weeks after the checks were issued, Linda Durbin sent a ten-day notice by certified mail to appellant's business address informing him that the bank had refused to cash the checks. She received a return receipt indicating that the notice was delivered on November 30, 1990 and received by an "L. Hatar" who signed as appellant's agent. The checks were never paid. On February 27, 1991 appellant was indicted on two counts of passing bad checks, violations of R.C. 2913.11 and felonies of the third degree.

In a trial to the court, Dave Koenig, regional security manager for the Fifth Third Bank of Toledo, testified for the state. Koenig testified that in late October 1990, the bank began investigating appellant's account for fraud. Specifically, appellant was suspected of kiting checks, a scheme by which a person draws on uncollected funds in an account. When Linda Durbin attempted to cash the two checks in issue, they were returned to her marked "uncollected." Koenig explained that at the time that Linda Durbin attempted to cash the checks, the bank had stopped paying out from appellant's account because of the kiting investigation. Koenig explained that he had instructed the operations department to stamp "uncollected" on checks issued from appellant's account. Appellant was notified on November 13, 1990, that his account was being investigated. Koenig explained, as did state's witness Detective Gale Karem of the Toledo Police Department, Check Unit, that an uncollected stamp meant that there may or may not be enough money in the account to cover the checks but for whatever reason (in this case a kiting investigation), the bank has decided not to pay out of the account.

Appellant was found guilty on both counts and sentenced to a one-and-one-half-year term of imprisonment. He now appeals, setting forth the following assignments of error:

"I. The court erred in failing to grant defendant's motion for a directed verdict of acquittal and in finding defendant guilty of passing bad checks

---

1. The commentary to R.C. 2913.11 states "non-existent accounts and insufficient funds are the two most common reasons why negotiable paper is dishonored, but they are not the only ones, and evidence may be introduced to show that an offender knew an instrument would be dishonored because of some other defect." In *State v. Sweesy* (Aug. 25, 1983), Cuyahoga App. No. 46174, unreported, 1983 WL 4662, the court rejected an appellant's argument that he could not be found guilty under R.C. 2913.11 since his checks were returned "uncollected funds" rather than "insufficient funds." The court reasoned that the net result was the same since appellant did not pay the checks after proper notice.

pursuant to ORC § 2913.11 where there was an antecedent [debt] and no evidence of intent to defraud.

"II. The finding of the trial court is against the manifest weight of the evidence."

In his first assignment of error, appellant contends that the court erred in denying his motion for acquittal. Appellant contends that the state failed to prove two elements of the statute, purpose to defraud and knowledge that the checks would be dishonored. Crim.R. 29 states:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."

██ It is well settled that a court should not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184; see, also, *State v. Daniels* (1984), 14 Ohio App.3d 41, 42, 14 OBR 45, 46–47, 469 N.E.2d 1338, 1339.

R.C. 2913.11 reads as follows:

"(A) No person, with *purpose to defraud,* shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, *knowing that it will be dishonored.*

"(B) For purposes of this section, a person who issues or transfers a check or negotiable instrument is presumed to know that it will be dishonored, if either of the following occurs:

"(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;

"(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor." (Emphasis added.)

Appellant initially contends there is no purpose to defraud when a check is written for an antecedent or preexisting debt as in his case. Appellant relies on the case of *State v. Rudd* (1988), 55 Ohio Misc.2d 1, 562 N.E.2d 955. In *Rudd,* the defendant issued a $50 check to a furniture company as payment towards her outstanding balance of $408.50. The check was returned "insufficient funds" and the defendant was charged with passing a bad check. However, the Hamilton County Municipal Court acquitted the defendant finding "no intent to defraud."

That court held: "Where a check, subsequently found to be worthless, is tendered for the payment of an antecedent or preexisting debt, the creditor is not defrauded, since the debt still remains and the creditor is not fraudulently induced to part with property in reliance upon the check's value." *Id.* at 2, 562 N.E.2d at 956.

Two years after the *Rudd* decision, the Eleventh District Court of Appeals addressed the issue of antecedent or preexisting debt in *State v. Doane* (1990), 69 Ohio App.3d 638, 591 N.E.2d 735. The defendant in *Doane* argued that the term "defraud" as used in R.C. 2913.11 requires that the passing of a check must occur simultaneously with the receipt of some benefit by the drawer. The defendant argued that such an exchange does not happen when a check is used to cover a preexisting debt and, therefore, R.C. 2913.11 would not apply to those checks. "The basis for this argument is that the issuance of the check itself does not affect the underlying relationship between the parties, *i.e.*, the drawer is still liable for the debt, while the payee did not give up anything for the check." *Id.* at 649–650, 591 N.E.2d at 743. The appellate court noted that the above rule has been adopted by a majority of those states in which the bad check statute, unlike Ohio's bad check statute, requires something of value be obtained as a direct result of the issuance of the bad check.

The court cited *State v. Lowenstein* (1924), 109 Ohio St. 393, 142 N.E. 897. In *Lowenstein*, the Supreme Court of Ohio concluded that financial damage was not a prerequisite for a finding of fraud. Rather, it is enough if the person issuing the bad check gains some type of advantage because of his actions. The *Lowenstein* court stated:

"When in payment of a past consideration a man gives a check, if he gives the check knowing that he has not funds on deposit to cover it, why does he so act? He so acts because he expects to gain an advantage. He expects perhaps to deceive persons who are pressing for payment; he expects them to think that he had paid the old debt when he has not paid." *Id.* at 401, 142 N.E. at 899.

The appellate court in *Doane* further cited the Revised Code's definition of "defraud" in reaching its holding:

"In the modern Revised Code, the term 'defraud' is defined in R.C. 2913.01:

" '(B) "Defraud" means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception some detriment to another.'

"For the purposes of interpreting R.C. 2913.11, passing bad checks, this court fails to see any distinction between the terms 'advantage' and 'benefit.' In this regard, it should be noted that the present definition does not require that something of value must be obtained as a result of the deception. Thus, this

court holds that the *Lowenstein* precedent is still binding, and that *a check given for a pre-existing debt can be the basis of a violation of the statutory prohibition.*"  (Emphasis added.)   *Id.,* 69 Ohio App.3d at 650, 591 N.E.2d at 744.

We agree with the Eleventh District that a check given for an antecedent or preexisting debt *can* be the basis for a violation of R.C. 2913.11. Furthermore, the drawer of a check for an antecedent or preexisting debt *can* be shown to have "purpose to defraud."  However, in this case, it was not proven that appellant had purpose to defraud.  Appellant gained no advantage in issuing the checks because he still owes the money and is subject to contempt.  Although the fact remains that appellant has failed to pay the first installment of the property settlement, Linda Durbin has suffered no detriment as she may bring an ordinary civil proceeding or contempt proceedings against appellant.  See *Harris v. Harris* (1979), 58 Ohio St.2d 303, 12 O.O.3d 291, 390 N.E.2d 789.

Appellant next contends that he was entitled to a judgment of acquittal because the state failed to prove that appellant knew the checks would be dishonored.  According to R.C. 2913.11, it can be presumed that a drawer knows a check will be dishonored when:

"(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving *notice of dishonor.*"  (Emphasis added.)

The Supreme Court of Ohio has held that where a statute requires notice of a proceeding, but is silent concerning its form or manner of service, actual notice will alone satisfy such requirement.  *Moore v. Given* (1884), 39 Ohio St. 661, paragraph two of the syllabus.  The *Moore* case centered on a statute which provided that:

" 'when any controversy shall arise about the rights of the respective owners of partition fences, and their obligation to keep up and maintain the same in good repair, if they cannot agree among themselves, either party may apply to the trustees of the township in which said fence may be situate, who, *after not less then ten days' notice* to all parties who may have any interest in the title or possession of said premises, and the repair or construction of said fence, shall proceed to view and assign to each party, in writing, his equal share of such partition fence * * *.' "  (Emphasis added.)   *Id.* at 662.

The *Moore* holding was followed in *State ex rel. Peake v. Bd. of Edn.* (1975), 44 Ohio St.2d 119, 73 O.O.2d 437, 339 N.E.2d 249.  The *Peake* case involved a contract dispute between a teacher and his school board.  The statute at issue, R.C. 3319.11, provided:  " ' * * * unless the employing board * * * gives such

teacher written notice of its intention not to re-employ him on or before the thirtieth day of April * * * ' " he shall be deemed reemployed. *Peake, supra,* 44 Ohio St.2d at 122, 73 O.O.2d at 438, 339 N.E.2d at 251. The *Peake* court held: "While R.C. 3319.11 requires written notice, it does not specify the manner or mode in which it must be served. Under this circumstance, Ohio has long followed the rule set forth in the second paragraph of the syllabus in *Moore v. Given [supra].*" *Id.*

The Supreme Court of Ohio once again followed the *Moore* case in *Edens v. Barberton Family Practice* (1989), 43 Ohio St.3d 176, 539 N.E.2d 1124. The court noted that:

"Several other jurisdictions concur that ' * * * in the absence of custom, *statute,* or express contract, a notice sought to be served by mail is not effective until it comes into the hands of the one sought to be served. *Johnson v. Barreiro,* 59 Cal.App.2d 213, 138 P.2d 746; *Regan v. Atlantic Refining Co.,* 304 Mass. 353, 23 N.E.2d 869; *George v. Adamson,* 184 Okl. 289, 86 P.2d 980. * * * ' *School Dist. No. 6 of Pima Cty. v. Barber* (1958), 85 Ariz. 95, 96, 332 P.2d 496, 497. See, also, *Jewell v. Unemployment Comp. Comm.* (1962), 55 Del. 16, 183 A.2d 585; *County Bd. of School Trustees of Young Cty. v. Bullock Common School Dist.* (Tex.Civ.App.1931), 37 S.W.2d 829; 58 American Jurisprudence 2d (1971) 507, Notice, Section 27. Cf. *Steele v. United States* (S.D.Cal.1975), 390 F.Supp. 1109." (Emphasis added.) *Edens, supra,* 43 Ohio St.3d at 179, 539 N.E.2d at 1127.

Black's Law Dictionary (6 Ed.1990) 1061, defines "actual notice" as "notice expressly and actually given, and brought home to the party directly."

■ As in *Moore* and the Supreme Court cases that have followed *Moore,* R.C. 2913.11, the statute at issue in this case, does not specify the manner in which a drawer must receive the ten-day notice. Applying the foregoing law, only actual notice of dishonor will be sufficient under R.C. 2913.11.

■ At the close of the state's evidence in this case, the state had proved that Linda Durbin sent a notice of dishonor by certified mail which was signed for by an individual named "L. Hatar." Linda Durbin testified that she did not know who "L. Hatar" was but she later found out that he was an employee of appellant. No evidence was presented to show that appellant actually received the notice. The mere mailing of a notice received by an individual other than the one sought to be served will not create a presumption that the appellant knew the checks would be dishonored under R.C. 2913.11.

Accordingly, the evidence was insufficient as to the elements of purpose to defraud and knowledge of dishonor. The court erred in denying appellant's

motion for acquittal, and appellant's first assignment of error is found well taken. Pursuant to App.R. 12(A)(1)(c), appellant's second assignment of error is moot.

The judgment of the Lucas County Court of Common Pleas is hereby reversed. Court costs assessed against the state.

*Judgment reversed.*

ABOOD and SHERCK, JJ., concur.