DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction for menacing, following a bench trial in the Toledo Municipal Court. Because we conclude that appellant was not denied effective assistance of counsel and that her conviction was supported by the evidence, we affirm.
 {¶ 2} Appellant, Stephanie Glaser, is the present girlfriend of Marcus Jones. Heidi Kaczala is Jones's former girlfriend and mother of his 12-year-old son. Appellant and Kaczala are both registered nurses.
 {¶ 3} On May 23, 2002, Kaczala filed a complaint in the Toledo Municipal Court, accusing appellant of making repeated phone calls to her house and work. As a result of these calls, Kaczala averred, she feared for her physical safety. This constituted menacing by stalking, according to the complaint.
 {¶ 4} The trial court found probable cause and issued a protective order. Appellant pled not guilty and the matter proceeded to a trial before the court.
 {¶ 5} At trial, Kaczala testified that, in April 2002, she received nine or ten phone calls from someone she identified as appellant. As to the content of these calls, Kaczala stated that appellant once called at the hospital where Nurse Kaczala worked and asked, "How does it feel to kill somebody" and "Have you killed anybody lately?" Kaczala also testified that on one day in April, appellant drove by Kaczala's home and shouted "You'll be sorry" from the open window of her car.
 {¶ 6} On cross-examination, Kaczala reported that she had kept a record of from where her caller identification indicated the calls came. She conceded that none came from appellant's home and most came from telephones miles from appellant's home or work. Kaczala also conceded that she blamed appellant for causing her to be fired from a nursing job. The trial court cut off questions as to whether Kaczala had also filed and then dismissed a complaint against Marcus Johnson and whether the complainant herself had kicked in appellant's windshield. The court ruled these areas of inquiry to be irrelevant.
 {¶ 7} Kaczala's testimony, at least with respect to the drive-by shouting, was supported by a friend of the complainant's who testified that she saw appellant drive by, stop her car and yell, "* * * something like `you had better watch yourself or you're going to get it.'" The witness also testified that she had been present at Kaczala's home when Kaczala had received a "ranting and raving" phone call, but conceded on cross-examination that she could not identify the voice of the caller and only believed the caller was appellant because Kaczala had told her.
 {¶ 8} Kaczala's 12-year-old son also testified to overhearing his mother receive a harassing phone call from someone his mother identified as appellant.
 {¶ 9} Appellant took the stand in her own defense and denied making any calls to Kaczala. Indeed, according to appellant, it was Kaczala who repeatedly called appellant's boyfriend. Appellant also testified that Kaczala had once been convicted of criminal damaging when Kaczala kicked in appellant's windshield.
 {¶ 10} Following submission of the case, the court took a brief recess, then returned stating:
 {¶ 11} "* * * I find it difficult in light of the multiple testimony from both sides to find out what the actual truth is. I tend to believe that it's probably someplace inbetween as to what actually happened and what actually occurred although the testimony was given from both of the parties, the victim as well as the defendant.
 {¶ 12} "I have somewhat cancelled that testimony out from the standpoint of the two — of those individuals. I understand there's [the complainant's son] inbetween and he's obviously the object of somebody's affection here and that's the reason for most of the problems.
 {¶ 13} "But, I do feel the testimony given by [the complainant's witness], as well as the child, is credible testimony. However, that testimony in and of itself does not rise to the level of menacing by stalking which is a misdemeanor of the first degree.
 {¶ 14} "If I have, or should take the testimony of [complainant's witness] and also accept the testimony of [complainant's son] I do think that it rises to the level of menacing and those statements that were made by the defendant to the victim.
 {¶ 15} "`You're going to be sorry. You're going to get yours,' and those kinds of comments which were heard by both [complainant's witness] as well as * * * the victim's son in this case. I think it rises to the level of saying there had been a basis of finding menacing, a violation of that area.
 {¶ 16} "For that reason the defendant is going to be found guilty of menacing, a lesser included offense and not menacing by stalking * * *."
 {¶ 17} The court sentenced appellant to 30 days incarceration: suspended; one year probation and a $250 fine.
 {¶ 18} From this judgment of conviction appellant now brings this appeal, setting forth the following three assignments of error:
 {¶ 19} "1. Appellant was denied her constitutional right to effective assistance of counsel when her trial attorney failed to request a rule 29 judgment of acquittal; and/or when her trial attorney failed to request a trial by jury and did not properly waive appellant's right to a trial by jury.
 {¶ 20} "2. Appellant's conviction is not supported by sufficient admissible evidence in the record.
 {¶ 21} "3. The manifest weight of the admissible evidence in the record does not support appellant's conviction."
 I. Ineffective Assistance of Counsel {¶ 22} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v.Washington (1984), 466 U.S. 668, 687. Accord State v. Smith
(1985), 17 Ohio St.3d 98, 100.
 {¶ 23} Scrutiny of counsel's performance must be deferential.Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v. Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v.Lott (1990), 51 Ohio St.3d 160, for Ohio's adoption of theStrickland test.
 {¶ 24} In her first assignment of error, appellant maintains that she was denied effective assistance of counsel because her trial counsel failed to move for a judgment of acquittal, pursuant to Civ.R. 29, and failed to request trial by jury and/or properly waive a jury. The purpose of a Civ.R. 29 motion is to test the sufficiency of the evidence and, where there is insufficient evidence, take the case from a jury. Dayton v.Rogers (1979), 60 Ohio St.2d 162, 163, overruled on other grounds, State v. Lassaro (1996), 76 Ohio St.3d 261, 266. The rule has no application in a case tried to the court. In a nonjury trial, the defendant's not guilty plea serves as a motion for acquittal. Id.
 {¶ 25} Concerning trial counsel's failure to demand a jury trial, this was a strategic decision which may not serve as evidence of counsel's deficient performance.
 {¶ 26} Absent evidence that trial counsel's performance was deficient, appellant's first assignment of error is not well-taken.
 II. Sufficiency and Weight of the Evidence {¶ 27} In her second and third assignments of error, appellant asserts that there was insufficient evidence to support her conviction and the trial court's finding of guilt was against the manifest weight of the evidence.
 {¶ 28} A verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, an appellate court must determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged.Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J. concurring); State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978), 56 Ohio St.2d 169; State v.Barns (1986), 25 Ohio St.3d 203.
 {¶ 29} Although appellant was originally charged with menacing by stalking, the trial court found that the prosecution failed to prove a pattern of conduct, an essential element of the offense. See Toledo Municipal Code 537.24(a) [R.C.2903.211(A)(1)]. Nevertheless, the court concluded that the prosecution had made its case on the lesser included offense of menacing.
 {¶ 30} Toledo Municipal Code Section 537.06 [R.C. 2903.22] states that:
 {¶ 31} "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of such other person or members of his immediate family."
 {¶ 32} A violation of the ordinance constitutes "menacing," a fourth degree misdemeanor.
 {¶ 33} Appellant argues that, if indeed, the trial court "cancelled * * * out" the testimony of appellant and the complainant, there was insufficient evidence to sustain all the elements of the offense.
 {¶ 34} Our role in reviewing the sufficiency of the evidence of a conviction is not to examine the mental processes of the trier of fact nor to interpret what the court meant when it "somewhat cancelled * * * out" the testimony of the complainant and the defendant. Instead, we are to review the evidence presented at trial to determine whether a rational trier of fact could have viewed the evidence and found the elements of the offense proven. In this matter, several witnesses testified to appellant's acts and statements which could have been construed as knowing threats. The complainant testified that she believed appellant intended her harm. If believed, this evidence sustained all the elements of menacing. Consequently, there is sufficient evidence to support appellant's conviction.
 {¶ 35} With respect to the issue of manifest weight of the evidence, we find nothing to suggest that the trier of fact lost his way or that there was a manifest miscarriage of justice in the conviction.
 {¶ 36} Accordingly, appellant's second and third assignments of error are not well-taken.
 {¶ 37} On consideration whereof, the judgment of the Toledo Municipal Court is affirmed. Costs to appellant.
Judgment affirmed.
Knepper, J., Lanzinger, J., Singer, J., Concur.