DECISION AND JUDGMENT
{¶ 1} Appellant, Jeremy Kerr, appeals the judgment of the Wood County Court of Common Pleas, which, after a bench trial, found him guilty of three counts of passing bad checks, violations of R.C. 2913.11(B). Due to the amount of the checks, two convictions were fifth degree felonies and one conviction was a first degree misdemeanor. Kerr was sentenced to eight months incarceration for each of the fifth *Page 2 
degree felonies, and 180 days incarceration for the first degree misdemeanor. The three terms of incarceration were ordered to run consecutively to each other. Kerr was also ordered to pay restitution in the amount of $3,067.47.
 {¶ 2} From that judgment, Kerr assigns the following errors for review:
 {¶ 3} "I. The trial court erred to the prejudice of appellant by denying his pretrial motion to dismiss for lack of jurisdiction and for renewing that denial at subsequent proceedings.
 {¶ 4} "II. The trial court erred by finding Appellant guilty of three counts of passing bad checks when the evidence presented was insufficient to support said finding.
 {¶ 5} "III. The trial court erred by finding appellant guilty of three counts of passing bad checks when said finding was against the manifest weight of the evidence.
 {¶ 6} "IV. Appellant received in effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio."
 {¶ 7} In his first assignment of error, Kerr argues that the trial court erred in denying his motion to dismiss for lack of jurisdiction. The arguments raised in that motion, titled, "Motion to Dismiss for Lack of Jurisdiction," are not jurisdiction at all, however. Rather, the arguments are directed toward the presumption contained in R.C. 2913.11(C).
 {¶ 8} On appeal, while Kerr argues a "jurisdictional" error was raised in his motion to dismiss, he still focuses on the presumption of R.C. 2913.11(C). In his motion *Page 3 
to dismiss, and at various points during trial, Kerr argued that the state failed to prove his knowledge that the checks would be dishonored by pointing to R.C. 2913.11(C). The statute relevantly provides:
 {¶ 9} "(B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument.
 {¶ 10} "(C) For purposes of this section, a person who issues or transfers a check or other negotiable instrument is presumed to know that it will be dishonored if either of the following occurs:
 {¶ 11} "(1) The drawer had no account with the drawee at the time of issue or the stated date, whichever is later;
 {¶ 12} "(2) The check or other negotiable instrument was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor."
 {¶ 13} The statute lists "three material elements of the crime of passing bad checks and prohibits a person (1) from issuing or transferring, or causing to be issued or transferred, a check or other negotiable instrument; (2) with purpose to defraud the payee; *Page 4 
and (3) with knowledge that it will be dishonored." State v.Edwards (2001), 141 Ohio App.3d 388, 394.
 {¶ 14} We agree with the state — and so, implicitly, does Kerr on appeal — that his argument regarding R.C. 2913.11(C) is not jurisdictional at all. R.C. 2913.11(C) allows a presumption that one element of the offense — knowledge that the check would be dishonored — is proven upon the introduction of certain types of proof. A presumption is nothing other than a fact presumed proven, based on a logical inference from another proven fact. R.C. 2913.11(C) allows the fact that the defendant knew the check would be dishonored to be presumed, if — but not only if — the prosecution proves either of the facts listed in R.C. 2913.11(C)(1) or (2). This section, however, is not the only evidentiary route which the prosecution may take in proving their case. The prosecution was and is correct in that it can proceed with other proof pursuant to R.C. 2913.11(B). Appellant's first assignment of error is not well-taken.
 {¶ 15} Next, we consider Kerr's second and third assignments of error jointly. He argues that his convictions were against the manifest weight of the evidence, and also, that his convictions were unsupported by sufficient evidence.
 {¶ 16} Convictions based on insufficient evidence violate a criminal defendant's right to due process of law. We are required to construe the evidence in favor of the prosecution and determine whether the evidence would enable any rational trier of fact to find beyond a reasonable doubt the essential elements of the offense. State v. Jenks *Page 5 
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by constitutional amendment on other grounds in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 17} With respect to the manifest weight of the evidence, a reviewing court questions "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" State v. Group, 98 Ohio St.3d 248,2002-Ohio-7247, ¶ 77, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. The appellate court considers all of the evidence, sits as a "thirteenth juror," and decides whether a greater amount of credible evidence supports an acquittal such that the jury "clearly lost its way" in convicting the appellant. State v. Thompkins (1997),78 Ohio St.3d 380, 387.
 {¶ 18} After the prosecution's opening arguments, Kerr's trial counsel renewed his self-styled "motion to dismiss for lack of jurisdiction." He again argued that because Kerr did not receive actual notice that the checks were dishonored, he did not have the statutory ten days to provide funds for the checks to be honored. The trial court, noting that the same arguments were made in the pre-trial motion, denied the motion.
 {¶ 19} The prosecution introduced testimony from Jason Knapp, who works for MR Redi-Mix, a cement supplier. He testified that Kerr, in his capacity as owner of Kerr Construction Services, Inc. ("Kerr Construction"), ordered three separate deliveries of cement to a construction job site. The three deliveries were made, and the three checks *Page 6 
were dated, on August 30, August 31, and September 1. Knapp delivered the cement to the construction site, and took three checks from Kerr at each delivery.
 {¶ 20} Kurt Nofziger, owner and president of MR Redi-Mix, testified that he deposited the three checks written by Kerr for the cement into the business account for MR Redi-Mix within 30 days from the time they were written. When the checks did not clear, Nofziger unsuccessfully attempted to contact Kerr by telephone several times. He then mailed a certified letter to Kerr notifying him of the insufficient funds and return of the checks — a so called "10 day" opportunity to satisfy the debt.
 {¶ 21} The certified letter was returned marked "other," as in another reason why delivery failed. It was also stamped "unclaimed." Nofziger also testified that Kerr had still not paid MR Redi-Mix for the three deliveries of cement.
 {¶ 22} Denise Radlinski, senior retail auditor with National City Bank, testified to the authenticity of copies of a bank signature card and bank statements for Kerr Construction's business account. The registered address for Kerr Construction on the bank account matched the address to which Nofziger mailed the certified letter to Kerr. She also testified to the authenticity of business account statements for Kerr Construction's account.
 {¶ 23} Radlinski testified that every time that a check or debit card transaction was dishonored for insufficient funds, the bank would charge the account a $34 fee. The same fee would apply to "overdrafts," which occurred when the bank honored the transaction despite the insufficient funds — which, of course, resulted in a negative *Page 7 
balance. Every time an item was dishonored for insufficient funds, and every time a transaction resulted in an overdraft, the bank would send the account holder a letter notifying the account holder of the insufficient funds and of the $34 fee.
 {¶ 24} Kerr's business account was opened in May 2006. For the months of May and June, there were no insufficient funds or overdrafts. The statement for the month of July 2006, showed an ending balance of negative $967.26. During the month of July, nine overdraft fees were levied on the account for items which were presented and which the bank honored, and 21 items were rejected for non-sufficient funds. For both the overdrafts and the non-sufficient funds, the bank would automatically generate a notification letter and mail it to Kerr's Construction.
 {¶ 25} The account entered August with a negative balance. From August 1 to August 30, the account was in overdraft six times and had non-sufficient funds to honor presented items 15 times.
 {¶ 26} On August 30, Kerr wrote the first check to MR Red-Mix for $1,731.46. On August 30, the account balance was negative $166.24. On August 31, Kerr wrote the second check for $1,083.90. Because of other items presented and additional non-sufficient funds fees, the account balance on August 31 was negative $234.24. On September 1, Kerr wrote the third check for $252.41. That day, the account balance was still negative $234.24.
 {¶ 27} During that time, Kerr continued to use the account. The account incurred a total of 18 non-sufficient funds fees after September 1. From August 30, the date he *Page 8 
wrote the first of the three checks, until October 16, 2006, when the account was closed, no deposits were made into the account — despite the continuing negative balance and outstanding checks. At no time did Kerr change the business address for Kerr Construction with the bank.
 {¶ 28} At the close of the state's case, Kerr's trial counsel moved to dismiss pursuant to Crim. R. 29, arguing, again, that the state's case must fail for failure to prove that Kerr received actual notice from MR Redi-Mix that the three checks were dishonored and giving him ten days to cure the debt. The trial court again denied the motion.
 {¶ 29} Kerr presented the testimony of the owner of the construction job site, Michael Iozzo, that he was to have paid Kerr several draws as the construction work progressed. Iozzo admitted that the draws were not paid because he was unsatisfied with the progress of the construction. One of Kerr's employees also testified for the defense; he testified (over hearsay objections) that he heard Iozzo and Kerr discussing the final payment for the project. At closing, Kerr's trial counsel again argued that the case should be dismissed for failure of the state to prove that Kerr received actual notice that the three checks were dishonored.
 {¶ 30} Given the evidence, we find Kerr's second and third assignments of error not-well taken. The state introduced ample evidence that Kerr was aware that his account balance was less than that required to honor the checks. At the time he wrote the checks, the bank had already mailed him numerous notices that the account had insufficient funds *Page 9 
and a negative balance. After he wrote the checks, at no time did the account carry a positive balance sufficient to honor the checks. He made no deposits into the account to satisfy the checks. The account had a negative balance during the entire month of September, and a negative balance the entire month of October, until the account was closed in mid-October. One final deposit was made to the account, just before the account was closed with a zero balance.
 {¶ 31} Kerr argued at trial, and again on appeal, that only proof of actual notice from MR Redi-Mix that the checks were dishonored pursuant to R.C. 2913.11(C) will suffice to prove the required mens rea for the offense. He cites our decision in State v. Durbin (1991),83 Ohio App.3d 156, in support. In Durbin, we held that the state could not prove that the defendant had the purpose to defraud using the evidentiary route of R.C. 2913.11(C). The defendant, Durbin, wrote two checks to his ex-wife in an attempt to satisfy a divorce judgment. When the checks were dishonored, his ex-wife mailed him a ten-day notice by certified mail. The return receipt indicated that someone else signed the receipt as Durbin's agent. We held that receipt of the certified mail by the defendant's agent did not constitute the actual knowledge required by the evidentiary route of R.C. 2913.11(C).
 {¶ 32} A failure to prove actual notice under this statutory section, however, only means that the state cannot be afforded the presumption that Kerr possessed that element of the offense. Instead, the state may and did introduce other evidence demonstrating that Kerr issued a check knowing that it would be dishonored. *Page 10 
 {¶ 33} The 1973 Legislative Service Commission Committee Comment to H.B. 511, which modified and consolidated pre-existing statutes respecting commercial paper, states: "Non-existent accounts and insufficient funds are the two most common reasons why negotiable paper is dishonored, but they are not the only ones, and evidence may be introduced to show that an offender knew an instrument would be dishonored because of some other defect."
 {¶ 34} Kerr is correct insofar as the presumption afforded the prosecution by R.C. 2913.11(C) requires actual notice of dishonor,State v. Durbin, 83 Ohio App.3d at 162. However, the prosecution can proceed to prove that Kerr knew the checks would be dishonored and that he wrote them with purpose to defraud pursuant to R.C. 2913.11(B) using other proof. Here, the trier of fact could infer that, because he received multiple prior notices from the bank that the account was overdrawn and had a negative balance, and because Kerr wrote checks when the account was overdrawn and then never deposited funds to cover the checks, he wrote the checks with knowledge that it would be dishonored. See State v. Bergsmark, 6th Dist. No. L-03-1137, 2004-Ohio-5753, ¶ 15-16.
 {¶ 35} As to Kerr's purpose to defraud, it was proven at trial beyond a reasonable doubt. R.C. 2913.01(B) defines "Defraud" as: "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." InDurbin, this court adopted the test of State v. Doane (1990),69 Ohio App.3d 638. A defendant acts with purpose to defraud if, in issuing a check, he gains "some type of advantage as a result of his actions." Id. at 650. "Fraud exists where the check writer *Page 11 
gains any type of advantage as a result of his or her actions."State v. Bergsmark, 6th Dist. No. L-03-1137, 2004-Ohio-5753, ¶ 12. An "advantage" or "benefit" includes, but is not limited to, something of value obtained as a result of the deception. Id. at ¶ 13.
 {¶ 36} The Doane court was concerned with whether a purpose to defraud could be present when a defendant issued a check to satisfy a pre-existing debt. The court rejected the rule from other jurisdictions, which held that a purpose to defraud existed only where checks were issued in a contemporaneous exchange for a benefit. Other jurisdictions had held that even if the check was not honored, in a pre-existing debt situation, the underlying relationship of the parties had not changed — "the drawer is still liable for the debt, while the payee did not give up anything for the check." Id.
 {¶ 37} Kerr, however, did receive an advantage from MR Redi-Mix contemporaneously with the issuance of the three checks. MR Redi-Mix would not have delivered the cement which Kerr required to complete the construction project without a check from Kerr on delivery. MR Redi-Mix delivered cement three times; each of the three times, Kerr issued a check with knowledge that he had a negative balance (after 51 bank notices) and without subsequently depositing funds in the account to cover the checks. Because Kerr received a clear benefit, and because MR Redi-Mix was clearly suffered a disadvantage as a result, the trier of fact could find that Kerr wrote the three checks with purpose to defraud. *Page 12 
 {¶ 38} The foregoing evidence established, beyond a reasonable doubt, that Kerr issued three checks knowing that they would be dishonored and with intent to defraud. His second and third assignments of error are, therefore, not well-taken.
 {¶ 39} Last, we consider Kerr's fourth assigned error, wherein he argues that his trial counsel rendered ineffective assistance such that he was deprived of his right to counsel. In order to establish ineffective assistance of counsel, an accused must show: (1) that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution; and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,687. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 40} Kerr alleges three instances of ineffective assistance: (1) the failure to call him to the stand in his own defense; (2) failure to recognize the implications of R.C. 2913.11(B) and failure to attack the state's avenue of proof; and (3) failure to demand a jury trial.
 {¶ 41} The failure to demand a jury trial and the failure to call a defendant to testify on his own behalf are both strategic decisions which are not evidence of Kerr's trial counsel's deficient performance.City of Toledo v. Glaser, 6th Dist. No. L-02-1362, *Page 13 2004-Ohio-1652, ¶ 25; State v. Dixon, 6th Dist. No. L-07-1110,2007-Ohio-6882, ¶ 26, citing State v. Clayton (1980), 62 Ohio St.2d 45,49.
 {¶ 42} Kerr's counsel's decision to focus on the lack of proof pursuant to R.C. 2913.11(C), and to style such arguments as "jurisdictional," was ill-founded. However, because the state introduced overwhelming evidence of guilt, Kerr was not prejudiced by his counsel's decision to pursue this "defense." That is, Kerr cannot show that, but for his counsel's actions, a reasonable probability exists that the trial would have had a different result. Kerr's fourth assignment of error is, therefore, not well-taken.
 {¶ 43} For the foregoing reasons, the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 14 
Mark L. Pietrykowski, J., William J. Skow, P.J., and Thomas J. Osowik, J., concur. *Page 1